[Sac. No. 869.     Department Two.—April 9, 1902.]

## THE HOLT MANUFACTURING COMPANY, Appellant, v. ARTHUR THORNTON, Respondent.

LANDLORD AND TENANT—RENTAL IN GRAIN—ACTION UPON HARVESTING CONTRACT—COUNTERCLAIM BY LESSEE.—In an action against the lessee of land, upon his contract to harvest the grain, the lessee may counterclaim all damages for plaintiff's delay in performing the contract, whether accruing to him or to the owner of the land, to whom an undivided third of the grain was payable as rental, and the plaintiff cannot object that the defendant can only counterclaim his own proportion of the damages.

ID.— CONTRACT RELATION.—The contract having been made between the lessee and the harvester, the owner of the land has no contract relation with the harvester, and can have no cause of action against him, growing out of the contract.

Id.—Bad Husbandry.—If the owner of the land has a cause of action against the lessee for bad husbandry, that is no concern of the harvester and cannot be objected to by him.

Id.—Breach of Contract—Delay in Performance—Loss of Grain Shelled-out—Proximate Damage.—The loss of a large amount of the grain by the shelling-out thereof, owing to plaintiff's breach of the contract by delay in its performance, which would have been saved if the harvesting had been commenced on time, is damage proximately caused by the breach of the contract, and is not remote and speculative.

Id.—Difficulty in Fixing Amount of Loss.—Where there was evidence sufficient to sustain the damages found by the jury, the fact that it was difficult to fix the amount of loss with accuracy, is not a ground of objection. He who breaks a contract cannot escape liability on account of the difficulty which his wrong has produced of devising a perfect measure of damages.

Id.—Loss of Grain Caused by Wind—Act of God.—The fact that much of the loss of the grain by shelling-out was caused by the wind, does not make the result an act of God; nor can the benefit of the rule against responsibility for damages caused by the act of God inure to the benefit of one who could have avoided the damage by complying with his contract.

Id.—Contemplation of Parties as to High Winds—Question of Fact.—The question whether high winds which caused the shelling-out of the grain were within the contemplation of the parties, when they entered into the contract for the harvesting of the grain, is a question of fact for the jury, and not of law for the court.

APPEAL from the judgment of the Superior Court of San Joaquin County and from an order denying a new trial. Edward I. Jones, Judge.

The facts are stated in the opinion of the court.

Budd & Thompson, and J. G. Swinnerton, for Appellant.

Louttit & Middlecoff, and H. R. McNoble, for Respondent.

McFARLAND, J.—This is an action to recover the balance alleged to be due plaintiff upon a contract which it made with defendant to harvest sixteen hundred acres of grain. It is conceded that of the amount which would be due plaintiff for the harvesting, according to the contract price, $645.04 remains unpaid; but defendant set up a counterclaim of $13,320 for damages alleged to have been suffered by him on account of the failure of the plaintiff to perform the con-

tract, and prayed judgment for that amount against plaintiff. The jury found for the defendant in the sum of $1,500, for which amount judgment was rendered for him against plaintiff; and the latter appeals from the judgment and from an order denying its motion for a new trial.

Appellant contends that respondent was the owner of only the undivided two thirds of the grain, and that Eppinger & Co. owned the other undivided third; and that, therefore, respondent could not counterclaim damages accruing to him and Eppinger & Co., and, at most, could only recover his proportionate share thereof; but these contentions cannot be maintained. Eppinger & Co. were the owners in fee of the land on which the grain was raised; but the instrument in writing executed by and between Eppinger & Co. and respondent, which was introduced in evidence, was clearly a lease under which respondent was the lessee of the land. The fact that the rental was to consist of a certain proportion of the grain which should be raised on the land, to be delivered after harvesting, in sacks at a named place of delivery, does not destroy the relation of landlord and tenant. Appellant had no contract relation whatever with Eppinger & Co., and the latter have no cause of action against appellant growing out of the latter's contract with respondent. If Eppinger has a cause of action against respondent for bad husbandry, that is no concern of appellant.

Respondent's cause of complaint is that by his contract with appellant the latter was to commence the harvesting not later that the fifth day of July, and that it did not commence until the fifteenth day of that month; and that the delay caused the damage, which consisted in the shelling-out of the grain. It is conceded that appellant did not commence until the 15th. Whether or not it contracted to commence by the 5th is a question about which there was some conflict of evidence; but the evidence was clearly sufficient to support the finding in favor of respondent on that point.

Nor are the contentions maintainable that the damages were not proximately caused by appellant's breach of the contract, and were too remote and speculative. A large amount of the grain shelled out before the harvesting was completed, and a good deal of it before the 15th when the

harvesting was commenced; and it is quite clear from the evidence that the most of the lost wheat—placed by some of the witnesses at half of the whole crop—would have been saved if appellant had commenced the harvesting on the 5th. This loss was not speculative or remote; and although it was, no doubt, somewhat difficult to fix the amount of the loss with great accuracy, still there was ample evidence to show an amount of damage exceeding that found by the jury. It has often been held that damages may be recovered for the destruction of merely immature growing crops although there was no absolute certainty that they would ever mature; for "he who breaks the contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages." And, of course, in the case of matured crops the damage is much more obvious and certain. (See *Shoemaker* v. *Acker*, 116 Cal. 239, where the subject is discussed and many authorities cited.) Neither can the contention be maintained that because much of the shelling was caused by the wind the loss of the grain was therefore the result of an act of God. There can be no just claim, under the evidence, that the wind in question was a hurricane; or was of such unheard of violence as to be beyond all contemplation or expectation. High winds in the region and at that season of the year were common; and while the evidence may show that on occasions referred to the wind was above the average of high winds, it does not show that it was such a wind as might not have been reasonably anticipated. Moreover, the benefit of the sanctity of the rule that no one is responsible for damages caused by the act of God does not inure to one who could have avoided the damage by complying with his contract.

We see no reason for reversing the judgment on account of error in instructing the jury. In appellant's brief the instructions complained of are referred to generally by numbers, without being copied,—leaving to the court the task of exploring the record to find out what language the court below used. We find nothing in them which is not beyond doubt correct, unless it be that part of the charge—found in instructions given by the court of its own motion, and in a modification of an instruction asked by appellant—which tells the jury, in substance, that it was for them to find

whether the high winds spoken of by the witnesses "were within the contemplation of the parties when they entered into the agreement concerning the harvesting of the grain." Appellant contends that this question should have been determined by the court, and not left to the jury; but we think that, upon principle and authority, the question was one of fact and not of law. In *Scott* v. *Hunter,* 46 Pa. St. 192,[1] the case was reversed because the court below took away from the jury the question "whether the defendants ought not to have apprehended that the unlawful" acts might result in plaintiff's loss. In that case the court, referring to the loss which was claimed to have been the result of defendants' acts, say: "It was a natural consequence, if it should have been foreseen, or if it would have been guarded against by men of ordinary prudence, using their own rights with proper regard for those of others, and it was manifestly for the jury to determine whether it was a natural consequence such as should have been foreseen by the defendants at the time." In *Fairbanks* v. *Kerr,* 70 Pa. St. 86,[2] the defendant had mounted one of several piles of flag-stones to make a political speech, and a crowd which gathered around him got upon some of the piles and broke several of the stones. For this Fairbanks was sued; and the trial court instructed the jury that if the persons whose weight broke the stones were collected by the act of defendant in making the speech, he was responsible for the damages. The supreme court of Pennsylvania reversed the judgment on the ground that the question whether the resulting damage was one which the defendant "ought to have or might have foreseen" was for the jury and not for the court. After referring to the authorities at some length, and commenting on the difficulty of applying the maxim, *Causa proxima non remota spectatur,* the court say: "In view of these principles it would be difficult to decide, as a legal conclusion, that the defendant is liable for the breaking of the stones in question by the bystanders. It cannot be said with *judicial certainty* that when he stopped to make his speech in the street he must have foreseen, as a natural and probable consequence of his act, the persons collecting together to listen to him would mount the pile of stones, and even, if some of them would, that so

many would as by their collected weight might break some of the stones. The lowermost stones in the pile were already trusted by the plaintiff with the weight of the uppermost. Height of pile, strength of grain, distance from the speaker, number of bystanders, and perhaps other circumstances, all would enter into the question of the probability of injury. *The question was therefore one of fact for the jury, and not of law for the court."* In *McMahon* v. *Field,* L. R. 7 Q. B. Div. 591, Brett, L. J., speaking of these three questions: "1. Whether the damage is a necessary consequence of a breach; 2. Whether it is the probable consequence; and 3. Whether it was in the contemplation of the parties when the contract was made," said: "Those two last are rather questions of fact for a jury than of law for the court to determine." The foregoing cases are in accord with the weight of authority on the subject, and express the principle that should be applied to the particular facts of the case at bar.

The question as to whether respondent waived appellant's delay in commencing to harvest the grain is one about which there is a conflict of evidence; and it was fairly submitted to the jury. There are no other points in the case which are necessary to be specially noticed; it is sufficient to say that none of them afford any foundation for reversal of the judgment.

The judgment and order appealed from are affirmed.

Temple, J., and Henshaw, J., concurred.

Hearing in Bank denied.