MYERS, RESPONDENT, *v.* BENDER, APPELLANT.

(No. 3,105.)

(Submitted January 6, 1913. Decided January 20, 1913.)

[129 Pac. 330.]

*Contracts—Breach—Measure of Damages—Agricultural Lands —Market Value—Evidence—Admissibility.*

Contracts—Breach—Measure of Damages.

1. An attorney entered into an agreement with his client under the terms of which he was obliged to carry a controversy over the title to agricultural lands through court or bring about a settlement by compromise or arbitration, as compensation for which he was to receive, at the completion of his services, twelve and a half per cent of the value of the lands finally awarded to the client. His efforts resulted in a compromise of the parties' claims. In an action to recover for services thus performed, the court admitted evidence as to the value of the lands subsequent to the compromise *and up to the date of the commencement of the action* about two years later, and instructed the jury that in reaching a verdict they should take into consideration the highest reasonable market value of the lands thus shown. *Held*, error, under section 6048, Revised Codes; the measure of plaintiff's damages was the principal amount due at the completion of the services, plus the detriment proximately caused by defendant's failure to pay, *i.e.*, legal interest for loss of the use of the money from that time up to the date of trial.

46 Mont.—32

Same.

    2.  The damages prescribed by section 6048, Revised Codes, for the breach of an obligation arising from contract must be limited to such as may fairly be supposed to have been within the contemplation of the parties when they entered into it, and such as might naturally be expected to result from its violation; in no case is the plaintiff entitled to recover anything more than he would have received had the contract not been breached.

Same—Agricultural Lands Platted for Town Lots—Market Value—Evidence—Admissibility.

    3.  In arriving at the market value of lands by contract made the basis for calculating the compensation of an attorney for services rendered in connection with the acquisition of title thereto, evidence of the value of a portion of such lands which had been platted and made an addition to a city, the corporate limits of which they adjoined, was properly admitted.

Evidence—Admission Without Objection—Review.

    4.  The admissibility of evidence introduced without objection may not be called in question on appeal.

*Appeal from District Court, Custer County; Frank Henry, Judge of the Sixth Judicial District, presiding.*

ACTION by George W. Myers against Henry Bender. From a judgment for plaintiff and an order denying him a new trial, defendant appeals. Reversed and remanded for new trial.

*Mr. George W. Farr* submitted a brief in behalf of Appellant, and argued the cause orally.

Under section 6048, Revised Codes, the amount which would compensate the plaintiff for the detriment caused by the breach of the contract would be payment of the amount which was due the plaintiff at the time of the completion or fulfillment of the contract, that was at the time the lands were conveyed from the Northern Pacific Railway Company to the defendant Bender. That then, we submit, would be the time at which valuation should have been fixed. The section of the Montana Code is in effect the common-law rule. (See *Hayes* v. *Cooley,* 13 N. D. 204, 100 N. W. 250.) A party may not recover a greater amount in damages for the breach of a contract than he would have gained by the full performance thereof on both sides. (*Hickok* v. *W. A. Adams Co.,* 18 S. D. 14, 25 N. W. 77.) The rule of damages for the breach of an open and unrescinded agreement is the value of the thing to be given, for the act

to be done, at the time when and the place where it was to be given or done. (*Wells* v. *Abernethy*, 5 Conn. 222.) The damages recoverable for a breach of contract are such as may reasonably be considered to have arisen naturally from such breach, or such as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract, as the probable result of the breach of it. (*Mihills Mfg. Co.* v. *Day*, 50 Iowa, 250; *Freeman* v. *Morey*, 41 Me. 588.) In case of uncertainty as to the value of the amount claimed, the rule is to assess on the basis of the lowest sum. (*Appeal of Jones*, 62 Pa. 324.) The plaintiff was entitled to recover damages only to the extent of the injuries sustained. Those injuries were the loss of the amount to which he was entitled upon the breach of a contract, that is, the value of the property involved at the time of the completion of the services—in other words, the loss suffered or the profit of which the obligee has been deprived. (*Gauthier* v. *Green*, 14 La. Ann. 788.) In a suit for violation of a contract, the court will not, for the measure of the damages, apply a rule which would give plaintiff a greater compensation for a breach of the contract than he would have received had it been performed. (*Bates* v. *Diamond Crystal Salt Co.*, 36 Neb. 900, 55 N. W. 258.) In the case at bar, if the plaintiff had been paid as compensation for his services at the time at which under the contract he should have been paid, there would have been no evidence in the case upon which the jury could have predicated damages due the plaintiff, in other words, there would have been a total failure of the evidence in this respect.

The plaintiff would not be entitled to recover anything more than what he would have received had the contract been performed by the defendant on his part, assuming that it had been performed. (*Morris* v. *Parhas*, 4 Phila. 62.) In an action on a note for a certain sum payable in cotton at a certain price per pound, the plaintiff is entitled to recover as damages for the nondelivery of the cotton the market value of the quantity of cotton deliverable under the contract at the time the same ought to have been delivered. (*Whitsett* v. *Forehand*, 79 N. C. 230.) On failure to pay a note payable in iron at a certain place, the

measure of damages is the value of the iron at the date of the note. (*Ross* v. *Carter*, 20 Tenn. (1 Humph.) 415.) The measure of damages for failure to deliver stock pursuant to contract is the value of stock at the time it ought to have been delivered. (*Tayloe* v. *Turner*, Fed. Cas. No. 13,770, 2 Cranch C. C. 203; *Fosdick* v. *Green*, 1 Cin. R. 537; *Enders* v. *Board of Public Works*, 1 Gratt. (Va.) 364; *Orange & A. R. Co.* v. *Fulvey*, 17 Gratt. (Va.) 366; *Wyman* v. *American Powder Co.*, 62 Mass. (8 Cush.) 168; *Eastman R. R. Co.* v. *Benedict*, 76 Mass. (10 Gray) 212.) Where a payment of $2,500, to be made "by a transfer of stock to the amount of the par value of said sum," the par value of the stock being $100 per share, was not made at the time appointed, and the stock subsequently fell to five dollars a share, the measure of damages was held to be the value of twenty-five shares of the stock at the time appointed for payment, with interest thereon to the time of recovery. (*Alexander* v. *Webster* (*Macauley Admrs.*), 6 Md. 359.)

*Messrs. Donald Campbell*, and *Fred. H. Hathhorn*, for Respondent, submitted a brief; *Mr. Campbell* argued the cause orally.

By the terms of the contract itself the appellant and respondent have fixed and determined the measure of damage in the event of a breach of such contract, namely, twelve and one-half per cent of the market value of the land in question at the time of such breach. It would therefore follow that the only question to be determined in the event of such breach would be, What was such market value and how should the market value be computed and estimated? "Market value" is a term that has a fixed and definite meaning. It is the fair value of the property as between one who desires to purchase and one who desires to sell. (*Palmer* v. *Penobscot Lumber Assn.*, 90 Me. 193, 38 Atl. 108; *Sharpe* v. *United States*, 112 Fed. 893, 50 C. C. A. 597, 57 L. R. A. 932; *Esch* v. *Chicago, M. & St. P. Ry. Co.*, 72 Wis. 229, 39 N. W. 129; *Ligare* v. *Chicago, M. & N. R. Co.*, 166 Ill. 249, 46 N. E. 803; *Lawrence* v. *City of Boston*, 119

Mass. 126; *Little Rock Junction Ry. Co.* v. *Woodruff*, 49 Ark. 381, 4 Am. St. Rep. 51, 5 S. W. 792; *Boom Co.* v. *Patterson*, 98 U. S. 403, 25 L. Ed. 206.) We know of no different principle or rule for the fixing and establishing of the market price in a suit upon a contract for the payment of the value of certain land after the performance of certain conditions precedent than in a suit for the condemnation of land by a public service corporation, and it seems to us that the rules laid down for the fixing of market price in condemnation proceedings are, upon principle, applicable to the case at bar.

Lewis, in the second edition of his work on Eminent Domain, section 479, lays down the following rules: "The market value of property includes its value for any use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating the compensation." (See *Montana Ry. Co.* v. *Warren*, 6 Mont. 275, 12 Pac. 641; *Northern Pac. etc. Ry. Co.* v. *Forbis*, 15 Mont. 452, 48 Am. St. Rep. 692, 39 Pac. 571; *Sweeny* v. *Montana Central Ry. Co.*, 25 Mont. 543, 65 Pac. 912.)

That this rule is the same in other classes of cases than those that involve the condemnation of land will be seen by an examination of the case of *Dady* v. *Condit*, 209 Ill. 488, 70 N. E. 1088, which case involved the breach of a contract for the sale of real estate.

Appellant's assignment of error No. 17 relates to the admission in evidence of plaintiff's exhibit 3, which is a paragraph of the former's answer in an action brought against him by the Chicago, Milwaukee and Puget Sound Railway Company. The answer was signed and sworn to by the appellant. It was filed subsequent to the 11th day of September, 1906, and prior to the 12th day of January, 1907. It constitutes a sworn statement of appellant as to the value of the land at the time the answer was filed, and we submit that this time was approximately the date or period of time which counsel for appellant

strenuously contends should be taken as the date or period of time when the value of the land should be fixed. The land referred to in this answer was a portion of the lands which respondent contends were obtained for appellant through the efforts and services of respondent. The record further discloses that the value of this land did not decrease from the time of the incoming of the Milwaukee road until the 12th day of January, 1907, but, if anything, increased in value. Exhibit 3 constituted a declaration against interest on the part of appellant, and we submit that its admission in evidence was entirely proper. Counsel for appellant in his brief says: "The admissibility of such testimony has been questioned by many authorities, and it has repeatedly been held inadmissible, and we believe that it was error for the court to so admit the evidence." But we fail to find any citation of these authorities. Exhibit 3 was an extrajudicial admission made in one case and could properly be used against him in another. (*Humphrey v. Stage Co.*, 115 Minn. 18, 131 N. W. 498; *Radclyffe v. Barton*, 161 Mass. 327, 37 N. E. 373; *Paxton v. State*, 60 Neb. 763, 84 N. W. 254; *Boulder & W. R. Ditch Co. v. Ditch etc. Co.*, 36 Colo. 455, 86 Pac. 101; *Land Co. v. Royal*, 140 Iowa, 381, 118 N. W. 426; *Bergman v. Solomon*, 143 Ky. 581, 136 S. W. 1010; *Seligman v. Greif* (Tex. Civ. App.), 109 S. W. 214; *Parsons v. Copeland*, 33 Me. 370, 54 Am. Dec. 628; *Warfield v. Lindell*, 30 Mo. 272, 77 Am. Dec. 614; *Wilson v. Phoenix Powder Mfg. Co.*, 40 W. Va. 413, 52 Am. St. Rep. 890, 21 S. E. 1035; *Every v. Rains*, 84 Kan. 560, 115 Pac. 114; *Taft v. Little*, 178 N. Y. 127, 70 N. E. 211; *Greif v. Seligman* (Tex. Civ. App.), 82 S. W. 533.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Plaintiff brought this action on April 8, 1908, to recover a judgment for services as an attorney and counselor at law, rendered to the defendant in an action in the United States district court, at Helena, Montana, in which the defendant was plaintiff and the Northern Pacific Railway Company and others were

defendants. The purpose of that action was to obtain a decree declaring the railway company a trustee of the title to lands hereinafter described, lying within the limits of the federal grant originally made to the Northern Pacific Railroad Company, for the benefit of the defendant herein, he claiming that he had made settlement upon them, and filed his declaratory statement prior to the definite location of the line of the railway, and that the patent under which it then held the entire section, which included the lands embraced in his settlement, had been issued to it by the federal authorities in violation of his right as a settler. At the time the action was brought it was verbally agreed that the plaintiff should receive as his compensation $150 in cash and twelve and one-half per cent of the value of any lands recovered in the action or to which title should be secured by suit, compromise, arbitration or otherwise. Subsequently the agreement was reduced to writing and signed by the parties. The writing bears date January 16, 1906, the action being then about to be determined by compromise agreement. Omitting formal parts, it reads as follows:

"The said G. W. Myers agrees to use due diligence in prosecuting said suit to a final determination in said court or by compromise settlement out of court; and it is agreed and understood by both parties hereto that the said G. W. Myers is to be paid for such legal services by said Henry Bender the sum of $150 cash, and is to be further paid by the said Henry Bender twelve and one-half per cent of all the land and money recovered either by suit or by compromise in said case, this contract includes all of plaintiff's claims known as D. S. No. 3621, comprising the west one-half of the southwest one-fourth, and the southeast one-fourth of the southwest one-fourth, and lot Four of Section 27 in Township 8 North of Range 47 East, containing 133 and 36-100 acres, intending hereby that said G. W. Myers is to be paid for such legal services the said sum of $150, and twelve and one-half per cent of the value of all the land and money so recovered either by suit, compromise or arbitration or otherwise in any manner whatsoever; and should land other than the above described be obtained or recovered by said suit,

compromise or arbitration then the said G. W. Myers is to further receive for such legal services twelve and one-half per cent of the value of all such land so obtained or recovered and it is understood and agreed by both parties hereto that the valuation to be placed upon any part of the claim known as D. S. No. 3621 that may be recovered is not to be less than $75.00 per acre, and further the said Henry Bender agrees to pay all expenses connected with said suit. It is further agreed to and understood that the said $150 is to be paid before the termination of said case and if not so paid before termination or settlement of said case then to be paid out of any money or land so obtained or recovered at the time of settlement of the said case.''

On February 17, 1906, an agreement was reached between Bender and the railway company, its codefendants being its grantees of a part of the lands in controversy, and one of its purposes in defending the action being to protect them as such. By the terms of the compromise Bender agreed to waive his claim to the south half of the southwest quarter of section 27, by executing and delivering to the company a quitclaim deed, and to dismiss the action. The railway company on its part agreed to quitclaim to the United States the northwest quarter of the southwest quarter and lot 4 of said section 27, containing 53.36 acres, and to convey to Bender by warranty deed lot 3 and that portion of lot 2 lying south of a line extending east and west across this lot at a distance of fifty rods south from the north line of the section and parallel therewith, and containing 34.02 acres. The railway company also agreed to pay to Bender $2,000 in cash. The purpose of the quitclaim by the railway company to the United States was to enable Bender to secure a patent to the 53.36 acres directly from the United States, under the provisions of the Act of Congress approved July 1, 1898 (30 Stats. at Large, p. 597). The agreement was executed, with the result that Bender became vested with title to the 34.02 acres by deed from the railway company dated June 14, 1906, and to 53.36 acres by homestead patent from the United States dated December 5, 1907.

The complaint alleges, in substance, that the plaintiff fully performed the services required by the contract, and that they resulted in securing to the defendant title to lands to the extent of 87.38 acres, together with $2,000 in cash; that these lands were at the date of the compromise, and ever since have been, of the value of $75,000; that under the terms of the contract plaintiff became entitled to receive from the defendant the sum of $9,375 in addition to the sum of $150, which he was entitled to receive in any event, or a gross sum of $9,525, and that no part of this has been paid, except the sum of $916.50, leaving a balance of $8,609.40, which the defendant has failed and refused to pay, though demand has heretofore been made for payment. Judgment is demanded for this amount with interest at eight per cent per annum from January 12, 1907, the date at which demand was made. The controversy at the trial was as to the value of the lands acquired by the compromise settlement, and hence as to whether plaintiff was entitled to recovery in any amount, the defendant insisting that inasmuch as title to the 53.36 acres was obtained by patent directly from the United States, they constituted no part of the recovery had in the action, and that the evidence as to them should be excluded. The court held that under the terms of the contract the plaintiff was entitled to twelve and one-half per cent of the value of all the lands obtained through the services rendered by him in connection with the settlement, whether title was obtained directly from the railway company or not. Evidence was also admitted, over defendant's objection, as to such value at any time subsequent to the date at which the compromise was reached and up to the date of the commencement of the action; and the jury were instructed that in determining the amount, if any, which they should find the plaintiff entitled to recover, they should take into consideration the highest reasonable market value of the lands shown by the evidence, at any time from the completion by the plaintiff of his services under the contract until the commencement of the action. The jury found for the plaintiff and awarded him damages in the sum of $2,244. Judgment was entered accordingly.

The defendant has appealed from the judgment and an order denying his motion for a new trial.

The brief of counsel contains many assignments of error upon specific rulings made during the progress of the trial. It will not be necessary to notice them in detail. The principal questions submitted for decision are whether the court correctly construed the agreement, and whether the rule adopted for the ascertainment of damages, as indicated by the admission of the evidence referred to and the instruction submitted to the jury, is the one applicable to this case.

The plaintiff and the defendant both stated that the writing contains the terms of their agreement as it was originally made. The intention is expressed that the plaintiff should, in addition to the cash payment, receive twelve and one-half per cent of the value of all lands to which the defendant should secure title at the final outcome of the action; for the language employed is ''intending hereby that said G. W. Myers is to be paid for such legal services the said sum of $150, and twelve and one-half per cent of the value of all the land and money so recovered either by suit, compromise or arbitration or otherwise in any manner whatsoever.'' This language clearly indicates that the parties intended to make all the lands obtained by the defendant, in connection with this action, from whatever sources the title might be derived, together with any amount of money paid to him, the basis upon which his contingent compensation should be calculated. The court's construction of the agreement was therefore correct.

The very purpose of the action was to have determined Bender's right to the area covered by his settlement. When the parties came to arrange their compromise, Bender might have taken a conveyance of the 53.36 acres directly from the railway company; for it held title under patent from the United States. Instead of pursuing this course, for some unexplained reason of his own he preferred, as the evidence shows, to obtain title directly from the United States. That he accomplished this result by requiring the railway company to relinquish its title under the provisions of the statute so as to put him in posi-

tion to obtain recognition of his settlement right by the authorities of the land department and the issuance of patent directly to himself, did not render these lands any less a part of the recovery in the action. It was not the intention that the plaintiff should have any interest in the lands recovered, for though it is recited in the agreement that the plaintiff "is to be further paid by the said Henry Bender twelve and one-half per cent of all the land and money recovered," the clause immediately following this and quoted above expresses in explicit terms that the intention was that, aside from the $150 in cash to be paid in any event, the amount of the additional compensation was made contingent upon the money value of the recovery and was to be payable in money. It is equally clear, from the last clause of the agreement, that whatever amount [1] plaintiff became entitled to receive, he was entitled to receive it when his services had been completed. These were completed when the compromise agreement was effected; for he did not, under the terms of the agreement, assume the obligation to perform any other service than to secure a settlement of the controversy over the title, and this was accomplished by the signing of the compromise agreement. The result of it was that the defendant, so far as plaintiff was concerned, became the owner of the lands in controversy, though he received formal conveyances at times subsequent to the time at which it was signed by the parties. The basis upon which his percentage was to be calculated was, therefore, the value at that time of the lands recovered with the cash payment added. The obligation of the defendant to pay then became absolute, the amount to be paid to be determined by the reasonable market value of the recovery at that time, subject only to the condition that the value of the 53.36 acres, for which patent was thereafter to be obtained, should not be fixed at less than $75 per acre. The failure of the defendant to pay the amount which thus became due was a breach of his obligation to discharge the contract by payment. "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party

aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom." (Rev. Codes, sec. 6048.) If the defendant had made full payment upon the completion of plaintiff's services, he would have fully performed his contract. Since he did not make such payment, he is to be held to compensate plaintiff for the detriment "proximately caused" by the delay. "In the ordinary course of things," the only detriment which could result to him was the loss by plaintiff of the use of the money. Therefore, full compensation for the detriment thus caused is to be measured by the principal amount due, together with interest at the legal rate up to the date of trial, allowing, of course, credit for such payments as have been made, at their respective dates. The court was therefore in error in admitting evidence to show the value of the recovered lands at any time subsequent to the date of the compromise agreement and in directing the jury to consider it in ascertaining the basis for calculating the amount plaintiff was entitled to recover. It is true the complaint alleges a demand on January 12, 1907, and the prayer is for the balance due with interest from that date. Except in so far as by this allegation the plaintiff shortened the time during which he was legally entitled to interest and to this extent diminished the amount which he would otherwise have been entitled to recover, the case should have been submitted to the jury upon the theory we have indicated. The statute embodies the [2] common-law rule, and the authorities generally agree that the damages recoverable in such cases must be limited to such as may fairly be supposed to have been within the contemplation of the parties when they entered into the contract, and such as might naturally be expected to result from its violation. In no case is the plaintiff entitled to recover anything more than he would have received had the contract been' performed by the defendant on his part, assuming that it had been performed. (*O'Keefe* v. *Dyer*, 20 Mont. 477, 52 Pac. 196; *Griffin* v. *Colver*, 16 N. Y. 489, 69 Am. Dec. 718; *Hayes* v. *Cooley*, 13 N. D. 204, 100 N. W. 250; *Bates* v. *Diamond Crystal Salt Co.*, 36 Neb. 900, 55 N. W. 258; *Mihills Mfg. Co.* v. *Day Bros.*, 50 Iowa, 250; *Wells*

v. *Abernethy*, 5 Conn. 222; *Hickock* v. *Adams Co.*, 18 S. D. 14, 25 N. W. 77; *Ross* v. *Carter*, 20 Tenn. 415; *Marr's Admr.* v. *Prather*, 3 Met. (Ky.) 196; *Alexander* v. *Webster* (*Macauley Admrs.*), 6 Md. 359; 1 Sutherland on Damages, sec. 50.) Because of the error in this behalf, the defendant must be awarded a new trial.

The Bender lands adjoin the corporate limits of Miles City. It appears that after the title was secured by Bender a part [3] of the lands were platted and made an addition to the city. The lots were then put upon the market for sale. Evidence was introduced tending to show the value of this portion of the lands for city lot purposes. It is argued that the court [4] erred in admitting it. A sufficient answer to this contention is that the evidence went in without objection on the ground now urged; but the objection, if made, would properly have been overruled. The competency of such evidence to establish market value of land was considered by the supreme court of the territory in the early case of *Montana Ry. Co.* v. *Warren*, 6 Mont. 275, 12 Pac. 641. In that case the court said: "Respondent was allowed to prove the value of the land for town lot purposes. He had the right to do so, whether he had built upon it or not. As we have seen, the question is not as to what use the land had been put. The owner has a right to obtain the market value of the land, based upon its availability for the most valuable purposes for which it can be used, whether or not he so used it." The rule thus stated has since been recognized and followed by this court. (*Northern Pac. etc. Ry. Co.* v. *Forbis*, 15 Mont. 452, 48 Am. St. Rep. 692, 39 Pac. 571; *Sweeney* v. *Montana Central Ry. Co.*, 25 Mont. 543, 65 Pac. 912.)

The contention is made that the evidence is insufficient to sustain the verdict. We shall not undertake to examine it in detail. Very little of it tends to establish definitely the value of any portion of the lands in controversy at or within a year subsequent to the date of the compromise agreement. We shall not presume that the plaintiff on another trial will not be able to show that their value at that time was such as to warrant the jury in awarding him a substantial amount.

The judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE HOLLOWAY concurs.

Mr. JUSTICE SANNER, being disqualified, did not hear the argument, and takes no part in the foregoing decision.

(Submitted January 6, 1913.   Decided January 20, 1913.)