RICHARDSON, Respondent, v. CRONE, Appellant.

No. 9209.

Submitted January 14, 1953. Decided June 26, 1953.

Rehearing denied July 23, 1953.

258 Pac. (2d) 970.

Mr. Vernon Hoven, Plentywood, and Mr. John Marriott Kline, Glasgow, for appellant.

Mr. Ernest L. Walton, Wolf Point, and Mr. A. R. Appelgren, Wolf Point, for respondent.

Mr. Hoven, Mr. Kline and Mr. Appelgren argued orally.

MR. JUSTICE FREEBOURN:

This is an action brought by Clayton Richardson, plaintiff and respondent, against Emma Crone, defendant and appellant, for services rendered in combining and hauling wheat.

Following an instruction from the trial judge, the jury returned a verdict for plaintiff and against defendant. From a judgment in plaintiff's favor, defendant appeals.

The complaint alleges: That at defendant's request, plaintiff, between August 11 and August 19, 1949, combined and harvested the wheat on 357 acres of land and hauled 3,933 bushels of grain from the land to the grain elevators at Whitetail, Montana; that the agreed price for such services was $3 per acre for the combining and 5¢ per bushel for the hauling; and that payment for such services had not been made. Judgment was asked in the amount of $1,267.65 with interest thereon at the rate of six per cent per annum from August 20, 1949.

The answer admitted such services were rendered and the value thereof, but denied the amount was owing. Such answer set up a counterclaim wherein it was alleged that such services were performed under an oral contract whereby plaintiff agreed, when defendant notified him the wheat was ready, to immediately start five machines combining such wheat; that on August 7, 8 and 10, 1949, she notified him the wheat was ready for harvesting and to bring five combines; that on August 11, 1949, plaintiff commenced combining with but one combine and on

August 17 started four additional combines; that on August 15 standing wheat was damaged by wind and hail; that had plaintiff started five combines, as agreed, the damaged wheat would have been harvested before the wind and hail came; and that defendant thereby lost 2,109.04 bushels of wheat valued at $4,218.08. Judgment was asked for $4,218.08, less the $1,267.65 claimed by plaintiff, with interest on such difference.

By reply plaintiff put in issue the new matters contained in the answer.

But one witness testified. This was defendant, who called as a witness by plaintiff. When asked, "Just what were the terms of the contract?," she said, "That he should come on to my place as soon as my grain was ready for combining, come on with five machines and do the work, and I was to pay him three dollars an acre plus five cents per bushel for hauling, for his services, and I was to drop him a card. He said he would come in three or four days to look at the grain again, it wasn't quite ready. * * * In the meantime I was to drop him a card and keep him posted.

"Q. Was there anything else said at that time, was that all that was said about the terms of the contract? A. I think we've covered it, he was to come with five machines when the grain was ready. * * * Just how it was worded between us and all that, I can't remember the exact wording after two years, but he did agree to come with five machines."

Defendant's testimony shows that the contract between the parties was a grain combining and hauling contract only. She testified:

"Q. Well, at that time you didn't have any idea that you were making any kind of a contract but a combining and grain hauling contract? A. That's right."

Defendant's testimony also makes it clear that, in making the oral contract, it was not within the contemplation of the parties that plaintiff would be liable for damage to the grain by hail or weather, even though plaintiff did not commence combining with five machines.

She testified:

"Q. And did you mention to him at that time, that you expected him to insure your crops against any acts of God? A. No.

"Q. Never mentioned anything like that to him at that time? A. No, I didn't * * * Acts of God? No, it never occurred to me to ask him to insure me against any acts of God. * * *

"Q. You didn't expect him at that time to assume any responsibility to you for any loss or damage to your crops by hail, did you? A. No."

R. C. M. 1947, sec. 13-714, is controlling here. It provides that, "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

The authorities generally agree that the damages recoverable in cases such as this must be limited to such as may fairly be supposed to have been within the contemplation of the parties when they entered into the contract. Myers v. Bender, 46 Mont. 497, 129 Pac. 330, Ann. Cas. 1916E, 245; Hall v. Advance-Rumley Thresher Co., 65 Mont. 566, 212 Pac. 290; Healy v. Ginoff, 69 Mont. 116, 220 Pac. 539.

In Hayes v. Cooley, 13 N. D. 204, 100 N. W. 250, 251, a case where plaintiff sought to foreclose a thresher's lien and wherein the defendants counterclaimed for damages to flax which plaintiff failed to thresh as agreed, the North Dakota Supreme Court said: "Upon the facts of this case we are compelled to hold, both upon principle and authority, that the defendants cannot recover the damages in question. The fundamental error in their contention lies in the assumption that where a thresher has, by failure to perform his contract, exposed crops to storms, and they are thereby destroyed, the loss is the natural and proximate consequence of his breach of contract. It is true, subsequent events may, and in this case they do, show that the loss would not have occurred but for the delay; but the indisputable fact remains that the storm is the direct and efficient cause of the loss, and for such loss, save under contracts resting upon exceptional circumstances, to which we will hereafter refer, he is not liable. It is well settled that, where one's failure to perform his

contract merely exposes property to destruction by causes for which he is not responsible, the supervening cause, and not his failure to perform, is the proximate cause of the loss. * * * The findings in this case merely present the breach of an ordinary contract to thresh grain. The loss of crops which may follow the breach of such a contract is, as we have seen, a remote, and not a natural and proximate, consequence of the breach." See also, Lynn v. Seby, 29 N. D. 420, 151 N. W. 31, L. R. A. 1916E, 788.

The record shows, when plaintiff rested his case upon the testimony of defendant and made his motion for a directed verdict, that defendant gave no indication that she had any evidence to offer and made no move to call any witness to the state.

One may well assume that the only possible witnesses to the ▮ making of the oral contract were plaintiff and defendant, and since neither side called plaintiff as a witness, and defendant having given a version of the contract and alleged breach thereof most favorable to her, the trial judge was in a position to properly decide the question of law raised by the motion for a directed verdict. See, Williamsburg City Fire Ins. Co. v. Lichtenstein, 181 App. Div. 681, 169 N. Y. S. 146.

This assumption is given color by the fact that the record discloses that no objection was made by defendant either to the motion for a directed verdict as made, or to the instruction by the court directing the jury to bring in such verdict.

"Where, upon the trial of an issue by a jury, the case presents only questions of law, the judge may direct the jury to render a verdict in favor of the party entitled thereto." R. C. M. 1947, sec. 93-5205.

In Consolidated Gold & Sapphire Min. Co. v. Struthers, 41 Mont. 565, 111 Pac. 152, 156, this court said: "So, too, whenever the defendant has failed to make proof of his defense, but has left the plaintiff's case, as shown by his evidence, uncontroverted, and this stands unimpeached so that but one inference may be drawn from it, and that favorable to the plaintiff, it has been the practice for the court to direct a verdict for the plaintiff. This course was pursued in Mayer v. Carothers, 14 Mont.

274, 36 Pac. 182, and was recognized as the proper rule of practice in Emerson v. Eldorado Ditch Co., 18 Mont. 247, 44 Pac. 969, and Murray v. Hauser, 21 Mont. 120, 53 Pac. 99. When a case is in this condition, it is stripped of questions of fact, and presents only a question of law for decision by the court. Helena Nat. Bank v. Rocky Mt. Tel. Co., 20 Mont. 379, 51 Pac. 829, 63 Am. St. Rep. 628; Emerson v. Eldorado Ditch Co., supra; Murray v. Hauser, supra; Dunseth v. Butte Electric Ry. Co., 41 Mont. 14, 108 Pac. 567.''

For the reasons stated the judgment of the district court is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICE BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN, dissenting:

I do not subscribe to the foregoing opinion. My objection to the opinion prepared by Mr. Justice Freebourn is that it fails to disclose important testimony given by defendant when called as a witness by plaintiff. From her testimony (and hers was the only evidence in the case) it is clear that it was within the contemplation of the parties that the reason for requiring five combines to start harvesting the grain as soon as it was ready for combining was that this resulted in ''a form of insurance.''

It was a means of getting the grain off the fields as soon as possible after it was ready for harvesting so as to avoid the possibility of loss through storm.

On this point defendant testified as follows:

''Q. * * * but I would like to have you testify more directly on the contract, when and where the contract was made and what were the terms of it? A. When we made the contract it was out in my barnyard where we had gone to look at this bin I told you about and I asked Mr. Richardson what he charged, and he said to do a good job that he wanted to do for me, he thought he would have to have three dollars an acre and five cents a bushel for hauling and I said well, I have a good crop, I

think I can stand three dollars per bushel [acre] and five cents for hauling, and I said it was worth something to have five machines on your land as soon as you are ready for combining, and that is what I called one kind of insurance and Mr. Richardson said I was smart, I was the second person that told that same thing to him, and so we agreed that the price was satisfactory * * * then we went into the house * * * and then Mr. Richardson said that he would have to have one day for allowing himself one day for hauling this machinery and unloading it, and he said that he would come back again in three or four days and examine the fields again, and in the meantime I was to drop him a card and keep him posted, and that was it. That was our agreement. * * *''

After so testifying the following took place.

''Q. And did you mention to him at that time, that you expected him to insure your crops against any acts of God? A. No.

''Q. Never mentioned anything like that to him at this time? A. No, I didn't.

''Q. Never thought of anything of that nature at that time, did you? A. I know there is always danger from—

''Mr. Walton: Move to strike the answer as not responsive to the question. Read the question.

''The Court: Motion granted. (Whereupon the court reporter read the question to the witness.) A. Of asking him to insure me against—

''Q. Any acts of God? A. Acts of God? No, it never occurred to me to ask him to insure me against any acts of God.

''Q. You didn't expect him at that time to assume any responsibility to you for any loss or damage to your crops by fire, did you? A. No.

''Q. You didn't expect him at that time to assume any responsibility to you for any loss or damage to your crops by hail, did you? A. No, I expected—''

At this point the following took place:

"Mr. Walton: Just a moment, I move to strike anything other and further than the yes or no answer from the record.

"Mr. Hoven: If the Court please, I would like the opportunity of the witness to ask if she had completed her answer.

"The Court: That calls for a yes or no answer.

"Mr. Walton: At this time, your Honor, the Plaintiff desires to submit a motion to the Court."

Plaintiff thereupon made a motion for directed verdict upon the ground that upon defendant's admissions plaintiff, in making the contract in question, did not assume any responsibility for loss or damage to defendant's crops through acts of God or through fire or hail. The motion was sustained. The jury was instructed to return a verdict for plaintiff in the sum of $1,267.65 and that defendant do not have and recover anything on her counterclaim. Judgment was entered on the verdict.

The fact that defendant testified that she didn't expect plaintiff to assume responsibility for loss or damage by hail, fire or act of God, is not destructive of her right to damages for failure to start the combining with five machines at the time agreed upon. Had that been done she alleges the grain would have been harvested before the hail storm occurred. She had the right to have her case go to the jury on the question of plaintiff's responsibility for failure to live up to his contract. She had also testified that to have five machines on the land as soon as the grain was ready for combining was one kind of insurance. This evidence brought the case squarely within R. C. M. 1947, sec. 17-301, which reads: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

On motion for directed verdict the evidence and the inferences to be drawn therefrom must be considered most favorably to the one against whom the motion is directed and inferences in favor

of the movant should be rejected. 53 Am. Jur., Trial, secs. 394, 395, p. 316.

The court did not permit defendant to explain her answer as she attempted to do. She said, "I expected," and was stopped by an objection by counsel who called her as his witness and by an adverse ruling of the court.

That defendant did not expect plaintiff to assume responsibility for damage or loss through hail, fire or act of God was consistent with her claim for responsibility for damages occasioned by plaintiff's failure to live up to his contract. In other words, if he complied with his contract there was of course no responsibility for loss through hail, fire or act of God. What the terms of his contract were and whether he complied with them is for the jury to determine where as here the pleadings raise an issue as to the terms of the contract. If he did not comply with his contract there was liability.

Likewise the rule is that in considering a motion for nonsuit, directed verdict or motion for new trial for insufficiency of the evidence, the evidence must be viewed in the light most favorable to the party against whom the motion is made and if there be a conflict in the evidence arising from discrepancies between the testimony of his own witnesses the motion should be denied if there is some evidence supporting his case, and if a part of his evidence supports his right to recover, the case should go to the jury. Hardie v. Peterson, 86 Mont. 150, 282 Pac. 494; Federal Land Bank of Spokane v. Green, 108 Mont. 56, 90 Pac. (2d) 489; Gobel v. Rinio, 122 Mont. 235, 200 Pac. (2d) 700. And this is so even though the discrepancy arises from the testimony of the party against whom the motion is made. Lake v. Webber, 120 Mont. 534, 188 Pac. (2d) 416.

A case very similar to this is that of Holt Mfg. Co. v. Thornton, 136 Cal. 232, 68 Pac. 708, 709. In that case defendant was sued for the balance due on a harvesting contract. As here, defendant counterclaimed for damages caused by plaintiff's failure to perform the contract. The contract provided that plaintiff was to commence harvesting not later than the 5th day of July

but did not do so until July 15th. The delay caused damage to defendant's grain which consisted in the shelling out of the grain. The wheat would have been saved had the harvesting commenced on July 5th. The court held the loss was not too remote or speculative and also that even though it was due to the wind, there was still liability as against the contention that it was due to an act of God. On the latter point the court said: ''Neither can the contention be maintained that, because much of the shelling was caused by the wind, the loss of the grain was therefore the result of an act of God. There can be no just claim, under the evidence, that the wind in question was a hurricane, or was of such unheard-of violence as to be beyond all contemplation or expectation. High winds in the region and at that season of the year were common, and, while the evidence may show that on the occasions referred to the wind was above the average of high winds, it does not show that it was such a wind as might not have been reasonably anticipated. Moreover, the benefit of the sanctity of the rule that no one is responsible for damages caused by the act of God does not inure to one who could have avoided the damage by complying with his contract.''

Because of the evidence above alluded to wherein defendant bargained for five combines and that they should all start working as soon as her grain was ready for harvesting, and that the parties recognized this as a type of insurance this case is clearly distinguishable from that of Hayes v. Cooley, 13 N. D. 204, 100 N. W. 250, and Lynn v. Seby, 29 N. D. 420, 151 N. W. 31, L. R. A. 1916E, 788, which involved ordinary threshing contracts and which the court carefully characterized as such but pointed out that a contract may be made under such exceptional and special circumstances that loss through storm caused by breach of the contract may be within the contemplation of the parties and in such a case there would be liability. The court specifically referred to the cases of Smeed v. Foord, 1 E. & E. 602, 120 Eng. Rep., Full Reprint, 1035, and Houser v. Pearce, 13 Kan. 104, which support that rule.

It is my view that in this case there was evidence that the

contract as testified to by plaintiff contained exceptional and special provisions contemplating liability if it was not complied with. It was specific on the point that plaintiff must start combining when notified that the grain was ready and more important, plaintiff was to have five machines in operation.

The only purpose of these requirements was to get the grain off the fields as soon as possible after it was matured and thus to avoid the possibility of damage through storms. It was this that defendant referred to as a kind of insurance and which drew from plaintiff the statement that he thought defendant was smart. The Hayes and Lynn Cases, supra, support recovery under such circumstances. The fact that defendant stated that she did not expect plaintiff to insure her crops against any act of God and that she did not expect plaintiff to assume responsibility for loss or damage to the crops from hail or fire is perfectly consistent with her contention that she expected plaintiff to comply with his contract.

I think too that in view of what the record discloses, it cannot be said that defendant "gave no indication that she had any evidence to offer" or made no objection to the motion for directed verdict or to the instruction by the court directing the jury to bring in a verdict against her.

As above noted defendant attempted to explain what she expected and was stopped by counsel for plaintiff and the court. Her counsel expressly requested the opportunity of asking the witness whether she had completed her answer and the court advised him that all she could do was to give a yes or no answer.

I think the court erred in sustaining the motion for a directed verdict in favor of plaintiff. There was ample evidence to go to the jury on the question of damages asserted by defendant in her counterclaim.

Plaintiff pleaded a different contract from that asserted by defendant, but that simply tendered a question for the jury.

In my opinion the judgment should be reversed and the cause remanded for trial.

MR. JUSTICE ANDERSON:

I concur in the foregoing dissenting opinion of Mr. Justice Angstman.