[Civ. No. 25147. First Dist., Div. Two. Feb. 13, 1970.]

MAISON C. CLARKE, Plaintiff and Appellant, v.
CHARLES MICHALS et al., Defendants and Respondents.

COUNSEL

Cornell, Wollenberg & Lynch and Robert H. Cornell for Plaintiff and Appellant.

Robert J. Glynn, Jr., Lamb & Glynn and M. K. Taylor for Defendants and Respondents.

## OPINION

**SHOEMAKER, P. J.**—Plaintiffs Maison Clarke and Ralph Price commenced separate personal injury actions, which were subsequently consolidated for trial, against defendants Charles Michals and the City of Larkspur. The injuries were incurred when a car driven by Clarke and in which Price was a passenger collided with a car driven by Michals. The issues raised by the pleadings included the negligence of both defendants and the contributory negligence of plaintiff Clarke. Defendant City of Larkspur also pleaded the defense of act of God, and defendant Michals was granted permission, during the course of the trial, to amend his answer to raise this defense. At the conclusion of the trial, the jury returned a verdict in favor of both defendants and against both plaintiffs. Judgment was entered in accord with the verdict, and plaintiff Clarke alone filed notice of appeal.

The evidence shows that the accident occurred at approximately 7:15 a.m. on January 23, 1964, on the Bon Air Bridge in Larkspur. Plaintiffs Clarke and Price both worked for the same employer in San Francisco. On the morning of the accident, Clarke, who was driving on MG, picked up Price at his home in Larkspur at approximately 7 a.m. and drove toward the Bon Air Bridge from the west. It was a cold morning, and Price had

noticed frost on the windshields of parked cars. Clarke had found it necessary to hose the ice off the windshield of his own car before leaving his home, and he observed that the roads were wet with a few frosty areas. Both men recalled that it had rained the preceding evening.

Clarke and Price both testified that they were traveling at a speed of 20 miles per hour as they approached the bridge. Clarke testified that as he approached the bridge, he saw that it was frosty because the concrete surface looked lighter in color than it normally did. He took his foot off the gas as he drove onto the bridge and slowed to a speed between 10 and 20 miles per hour. Just before they entered the bridge, Price saw an oncoming car, which was approximately halfway across the bridge and which appeared to him to be fishtailing. Clarke testified that he first observed the oncoming car when he was some 20 feet onto the bridge. According to Clarke, the car was not actually fishtailing, but it was sliding sideways at a 45 degree angle into his lane of traffic. Both Clarke and Price estimated the speed of the car at 40 miles per hour.

Price testified that when he observed the oncoming car, he stated to Clarke that he thought the car was going to hit them and that Clarke replied either that he didn't know what to do or didn't know how to get out of the way. Clarke recalled stating that there was no place for him to go. Clarke and Price both testified that Clarke remained in the eastbound lane and continued to reduce his speed after the two men had become aware of the oncoming westbound car. Price estimated that the westbound car was still traveling at a speed of 40 miles per hour when the collision occurred.

Defendant Michals, driving the Ford sedan which collided with the Clarke vehicle, testified that he approached the bridge from the east on the morning of the accident. Before leaving his home in Kentfield Gardens, he had to scrape the ice off his windshield. He had also noticed frost on the ground. As he approached the Bon Air Bridge, he slowed from 25 to 20 miles per hour as he crossed a "rumble strip" which was constructed of asphalt and tar and connected the road to the bridge. Michals stated that the road curves slightly to the right at the point where the road leads into the rumble strip and onto the bridge. As he came onto the bridge after negotiating this curve, his car began to slide or skid to the left. Michals had observed no unusual conditions until he entered the bridge and sensed a loss of control over his car. As his car began to veer into the opposite eastbound lane, he recalled pumping his brakes and turning the steering wheel in the direction of the skid. He noticed the oncoming Clarke vehicle and used every effort to control his skid and maneuver his car back into the proper lane. He was unable to do so, however, and the front end of his car continued to veer into the eastbound lane and remained in a skid for some 200 feet until it collided with the Clarke vehicle. Michals stated that the collision took place in the

eastbound lane approximately in the center of the bridge. According to Michals, he was moving so slowly when the collision occurred that there was some doubt in his mind that he was moving at all. However, the Clarke vehicle was "very definitely" in motion.

Plaintiffs Clarke and Price and defendant Michals all testified that they had never encountered an icy condition on the Bon Air Bridge on any occasion prior to the day of the accident. Clarke and Price had lived in the area between one and two years, and Michals had lived in the Kentfield area for several years.

Officer Newman of the Larkspur Police Department drove onto the Bon Air Bridge at 7:40 a.m. on the day of the accident, approaching from the west. Although he was exceeding the 25-mile speed limit because he was responding to an accident call, he had no difficulty when he applied his brakes and brought his car to a stop on the bridge. However, when he stepped out of his patrol car, his feet slipped on the surface of the bridge and he saw that there was ice all around his car. He could recall no prior occasion when there had been ice on the bridge.

Warren Mistron, the Superintendent of Public Works for defendant City of Larkspur, testified that he had crossed the Bon Air Bridge in both directions at 6:30 a.m. on the day of the accident. He estimated that he was traveling at a speed of 25 to 30 miles per hour and stated that he had no trouble with his car skidding or sliding. He did not notice any ice on the bridge at that time. When he subsequently returned to the bridge shortly after the accident, there was ice all over the road surface of the bridge.

George Angus drove onto the bridge at approximately 7:30 a.m. at 15 miles per hour. As he entered the bridge, he noticed nothing unusual about its surface, but the moment he applied his brakes, his car went into a slide for less than 25 feet and then stopped. He left his car and observed that the surface of the bridge was icy.

Ronald Piper, formerly the Larkspur City Manager, testified that ice and frozen puddles were not an unusual occurrence in Larkspur. Additional witnesses testified as to the icy condition on the bridge and that it had never been noted by them on any prior occasion.

Plaintiff Clarke urges that the trial court committed prejudicial error by giving a combination of jury instructions which were not justified by the evidence and which erroneously overemphasized the case for the defense. Among the instructions complained of are those on act of God, contributory negligence and imminent peril.

■ With regard to the latter two instructions, the record contains little evidence suggestive of contributory negligence on the part of plaintiff

Clarke. The testimony establishes that Clarke did everything within his power to bring his car to a stop prior to the accident, and it is undisputed that the collision occurred in his lane of traffic. However, defendant Michals testified that he was barely moving at the time of the collision and that plaintiff Clarke's vehicle was "very definitely" in motion. Michals' testimony as to his own speed was obviously self-serving and at best improbable in view of the undisputed evidence that he had slid at least 200 feet on the bridge and had still been unable to maneuver his car back into his own lane prior to the collision. However, the testimony of Clarke and Price shows that Price became aware of Michals' oncoming car before Clarke had driven onto the bridge, whereas Clarke did not see the oncoming car until he was 20 feet onto the bridge. Viewing this evidence in the light most favorable to defendant Michals, it is possible to infer that if Clarke had been more alert and had commenced slowing his car at an earlier point, Michals could have returned to his own lane of traffic before Clarke arrived at the point where the collision actually occurred. Under these circumstances, the evidence, negligible as it is, justifies the instructions on contributory negligence.

■ Likewise, the instructions on imminent peril are justified in view of Michals' testimony that he drove onto the bridge at a moderate rate of speed, suddenly found himself in a skid and, despite his efforts to control same by pumping his brakes and steering in the direction of the skid, continued to slide for over 200 feet without returning to his own lane. In view of the testimony of Angus that he crossed the bridge in the same direction as Michals shortly after the accident, traveling at only a slightly lower speed, and managed to come to a stop within 25 feet, it was clearly proper for the jury to determine whether Michals did all that a reasonably prudent person would do after he drove onto the bridge and began to skid on the ice.

■ With regard to the instructions on act of God, plaintiff points out that the court initially instructed the jury that both defendants were relying on said defense. The court then advised the jury that an act of God meant such an unusual and extraordinary manifestation of the forces of nature that it could not normally be anticipated or expected; that a defendant was not liable for a loss occasioned by an act of God unless his own negligence had contributed to the damage; and that in order for a defendant to sustain the defense of act of God, he was required to prove by a preponderance of the evidence that the icy condition was of such an unprecedented nature that no ordinary or reasonable amount of care would have prevented the damage.

Plaintiff contends that the above instructions on act of God were totally unwarranted by the evidence because ice was not in the least unusual in the Larkspur area during the winter and this fact was well known to both

defendants. In support of this contention, plaintiff relies on the testimony of defendant Larkspur's former city manager to the effect that ice or frozen puddles were not unusual in the area during the winter, and he also relies upon defendant Michals' testimony that on the very morning of the accident, he scraped ice from the windshield of his car and saw frost on the ground. Plaintiff contends that under these circumstances, the icy condition of the Bon Air Bridge was certainly not unforeseeable. Although defendants attempt to counter this argument by pointing out that no single witness had ever encountered ice *on the bridge itself* prior to the accident, plaintiff denies that this fact is of any real significance and argues that since ice was a common condition in winter throughout the area, the formation of ice on the bridge, as well as anywhere else, could not be deemed so extraordinary or unforeseeable as to justify instructions on the defense of act of God. We agree.

It has been held that in order to constitute an act of God, a storm must be so unusual in its proportions that it could not be anticipated by a defendant. (*Inyo Chemical Co.* v. *City of Los Angeles* (1936) 5 Cal.2d 525, 532-535 [55 P.2d 850].) Also, a rainstorm of merely unusual intensity is not an act of God. (*Sturges* v. *Charles L. Harney, Inc.* (1958) 165 Cal.App. 2d 306, 320 [331 P.2d 1072].) Likewise, a wind which is not a hurricane nor of such unheard of violence as to be beyond all contemplation or expectation does not amount to an act of God. (*Holt Mfg. Co.* v. *Thornton* (1902) 136 Cal. 232, 235 [68 P. 708].) In the instant case, ice was not in the least unusual in the Larkspur area in the winter, and its formation on the surface of the Bon Air Bridge was an occurrence which clearly cannot be deemed beyond all contemplation or expectation.

We are satisfied that the instructions on act of God were improperly given. However, the question remains as to whether such error was prejudicial. We have in mind that the case against defendant Michals was a strong one, and that the evidence of contributory negligence on the part of plaintiff Clarke was very weak. With regard to the evidence bearing upon Michals' negligence, the fact that he skidded over 200 feet strongly suggests that he entered the bridge at an unduly high rate of speed, considering known weather conditions. It is also of considerable significance that other vehicles had crossed the bridge without difficulty earlier that morning and that Angus, when crossing immediately after the accident, slid for less than 25 feet upon encountering ice on the bridge surface.

The evidence as a whole was most favorable to plaintiff Clarke and unfavorable to defendant Michals, and we can readily see that the defense verdict, in all probability, resulted because the trial court, in addition to fully instructing the jury on negligence, proximate causation, contributory

negligence and imminent peril, also erroneously instructed on the defense of act of God.

In *Butigan* v. *Yellow Cab Co.* (1958) 49 Cal.2d 652 [320 P.2d 500], the court reversed a judgment based upon a defense verdict in a negligence case and held that the defense of unavoidable accident no longer had any legitimate place in modern pleading and was, in reality, nothing more than a denial by the defendant that he was guilty of negligence proximately contributing to the loss or injury. The court pointed out that since the ordinary instructions on negligence and proximate cause sufficiently advised the jury on the plaintiff's burden of proof, an instruction on unavoidable accident served no useful purpose, was confusing and overemphasized the case for the defense. The court stated: "When the jurors are told that 'in law we recognize what is termed an unavoidable or inevitable accident' they may get the impression that unavoidability is an issue to be decided and that, if proved, it constitutes a separate ground of nonliability of the defendant. Thus they may be misled as to the proper manner of determining liability, that is, solely on the basis of negligence and proximate causation. The rules concerning negligence and proximate causation which must be explained to the jury are in themselves complicated and difficult to understand. The further complication resulting from the unnecessary concept of unavoidability or inevitability and its problematic relation to negligence and proximate cause can lead only to misunderstanding." (P. 660.)

The defenses of unavoidable accident and act of God are similar in nature, and it would not be inaccurate to state that the defense of unavoidable accident embraces an act of God (see *Butigan* v. *Yellow Cab Co.,* dissenting opinion, *supra,* at p. 666). Although no post-*Butigan* decision has expressly held that the giving of an act of God instruction is error per se in an ordinary negligence case, the effect of giving such an instruction in combination with one on unavoidable accident was considered by the court in *Dufour* v. *Henry J. Kaiser Co.* (1963) 215 Cal.App.2d 26, 28-29 [29 Cal.Rptr. 871]. The court pointed out that the giving of the instruction on unavoidable accident, although clearly erroneous under the *Butigan* rule, could, under proper circumstances, be deemed nonprejudicial. However, the court concluded that where said instruction was coupled with one on act of God, the cumulative effect was to unduly emphasize defense contentions and blur the jury's view of the real issues in that case, negligence and proximate cause as they related to the foreseeability of a heavy rain and its harmful results.

In the instant case, the instructions on act of God were unwarranted by the evidence, and we believe that they did confuse the jury and overemphasize the position of the defense to the detriment of plaintiff Clarke.

In view of the above, the judgment in favor of defendant Michals and against plaintiff Clarke must be reversed. However, a somewhat different situation exists as to the judgment in favor of defendant City of Larkspur. All of the arguments in plaintiff Clarke's opening brief appear to be directed against defendant Michals only, and defendants in their brief assert that the evidence wholly failed to establish liability on the part of the city. In his closing brief, plaintiff Clarke does not take issue with this proposition. Neither does he challenge the fact that the instructions given by the court relative to plaintiff's right to recover against the city correctly stated the law. Those instructions advised the jury that the city could be found liable only if the accident resulted from a reasonably foreseeable dangerous condition on the bridge and the city had actual or constructive knowledge of such condition a sufficient time prior to the accident so that it could have taken measures to protect against said condition. The jury was further instructed that the city could have constructive notice of a dangerous condition only if the condition existed for such a period of time before the accident and was of such an obvious nature that the city, in the exercise of due care, should have discovered the condition and its dangerous character. Finally, the court instructed the jury that the city was not liable for injuries caused by weather conditions, such as ice, if the effect of the ice on the use of the bridge would be reasonably apparent to and would be anticipated by a person using the bridge with due care.

In the instant case, there was uncontradicted evidence that no prior claim or complaint regarding ice on the Bon Air Bridge had ever been received by defendant city. In addition, there was no evidence that an icy condition on the bridge had ever existed prior to the accident or that, if it had, any person crossing the bridge and using due care had not found the condition to be readily apparent and conducted himself in such a manner that no accident or injury resulted from the icy condition. Certainly there was no evidence that any representative of the city was aware that the bridge was in an icy condition on the day of the accident until after the accident had taken place. Under these circumstances, the evidence was legally insufficient to support a verdict or judgment against defendant city.

Since the judgment must be reversed as against defendant Michals, it would serve no useful purpose to discuss certain other allegedly improper instructions of which plaintiff complains. Upon retrial, the parties will have ample opportunity to discuss with the trial court their views on the instructions which are or are not applicable to the case and we assume that the instructions given on retrial will accurately state the principles of law applicable to the evidence which the parties will produce at such trial.

The judgment in favor of defendant Michals and against plaintiff Clarke is reversed. In all other respects, the judgment is affirmed.

Taylor, J., and David, J. pro tem.,* concurred.

A petition for a rehearing was denied March 13, 1970, and the petition of respondent Michals for a hearing by the Supreme Court was denied April 9, 1970.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.