WILLIAM O'KEEFE, APPELLANT, *v.* WILLIAM DYER, ET AL.; RESPONDENTS.

[Submitted Feb. 3, 1898.  Decided Feb. 21, 1898.]

*Action on Bond—Damages.*

1. If the sum mentioned in a bond given to secure the performance of an agreement, to which it is collateral, is a penalty, the obligee can, upon a breach, recover only his actual loss; and, unless proof be made of the amount of the injury sustained, he can recover nominal damages only.

2.  IF the sum mentioned in the bond is liquidated damages, the obligee upon a breach is entitled to the full sum mentioned.

3.  THE sum mentioned in the bond is not presumed to be liquidated damages for a breach of the condition, unless the language used, or the circumstances existing at the time the bond was made, show clearly that the sum mentioned was intended to be taken as liquidated damages; and the burden of proof is upon the party alleging such intention.

BOND FOR A DEED.—Defendant having applied for a United States patent for a mining claim, in which application he included premises claimed by plaintiff, executed and delivered to the plaintiff a bond in the sum of $1,000, conditioned for the conveyance of the premises in dispute to plaintiff, upon demand after patent issued; *held*, that the sum mentioned in the bond was, *prima facie*, a penalty; and that the burden was upon plaintiff to show that it was liquidated damages.

4.  SAME—*Mining Claim, Damages.*—There is no presumption in the law that damages resulting from the breach of an obligation to convey a mining claim, cannot be calculated on the basis of the market value of the claim or that the market value of such property is incapable, impracticable or extremely difficult of ascertainment.

SAME.—Evidence to the effect that it is impossible to ascertain the value of a quartz lode claim, where it does not appear that the witness had ever visited or examined the premises, or has any knowledge thereof, does not prove that the value of the claim cannot be ascertained.

5.  The right to object to the validity of the tender of a deed, on the ground that there was no evidence that it was executed by the successor of defendant, or that the signatures therein were genuine, or that the officers of the successor were authorized to execute it, is waived by objecting on the sole ground that the deed tendered was executed by the successor, when it should have been the deed of defendant.

6.  WHERE a deed is, by stipulation, incorporated into the transcript, and referred to as being on file with the clerk, and the court below and the parties treated the instrument as in evidence, the objection that it was not in evidence is without merit.

7.  WHERE defendant, who had given his bond to plaintiff to quitclaim certain mining property, tendered a deed of the successor of all his rights, which purported to grant, bargain, and sell, as well as quitclaim, the property to plaintiff, the tender was sufficient under the bond, where it was not shown that plaintiff could suffer any damage by the change, or that he would not thereby obtain a full title.

*Appeal from District Court, Lewis and Clarke County; H. N. Blake, Judge.*

ACTION by William O'Keefe against William Dyer and others to recover on a bond. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

Statement of the case by the justice delivering the opinion.

This action was brought to recover the sum named in a certain written contract, dated November 1, 1892, executed by defendant Dyer as principal, and by the other defendants as sureties, by the terms of which the defendants acknowleged themselves bound to plaintiff for $1,000, the condition being: "Whereas, the above-bounden Wm. Dyer is about to apply for a United States patent for certain quartz lodes situated in

Deer Lodge county; and whereas, in the survey of the Gladstone lode some ground claimed by the said O'Keefe has been included, described as follows [description]: Now, therefore, if the said William Dyer shall execute to the said Will O'Keefe a deed of quit-claim to the portion of claim above described, at any time when called upon so to do, after the securing of United States patent therefor, then this obligation shall be null and void; otherwise, be and remain in full force and effect."

The complaint alleged that in January, 1893, Dyer conveyed the property to the Ontario Mining Company, and that in December, 1894, he secured the patent therefor, which inured to the benefit of the mining company, and that in May, 1895, the plaintiff demanded a conveyance from Dyer, who refused to make it.

The answer admitted the making of the contract the conveyance to the mining company, and the issuance of the patent, and averred that Dyer's conveyance to the mining company was expressly made subject to all claims existing against him at the time of the transfer with reference to the property, and that the company had always recognized the obligation entered into by Dyer, and ever since receipt of the patent had been ready and willing to execute the conveyance to plaintiff, when demanded, and denied that any demand was ever made for a conveyance, or that Dyer refused to convey, and stated that the plaintiff applied to the company in 1895 for a conveyance, and was informed by its officers that on presentation of the bond, from which the description could be obtained, the company would convey to plaintiff. The answer tendered, and offered to deliver on behalf of the defendants, a deed of bargain and sale from the mining company, conveying to plaintiff the property described in the contract, and the deed was filed with the answer.

The case was tried without a jury. Upon the trial the plaintiff testified: "With reference to the value of this piece of ground, it is impossible to tell what the value is. It is a quartz claim, and there is no rule by which you can ascertain

its value.    The Ontario Mining Company is putting in its developments at that point, and I don't know anything about their workings.    I don't know anything about the value of the ground."    No other testimony whatever was given upon this subject.    The plaintiff testified also that in April, 1894, before the patent was issued, he requested Dyer to "settle this matter up," Dyer responding, "You need not fear; I'll settle it."

For the defense evidence was received tending to show that no demand was ever made on Dyer for a deed.    Defendant Hedges testified that in October, 1895, while he was president of the mining company, plaintiff asked him when the company intended to give plaintiff a deed for the ground; and witness told him that he could have a deed from the company whenever he would present the bond, so that witness could get a description of the property to be conveyed.    This witness also stated, in effect, that the mining company took title to the ground from Dyer subject to the rights of O'Keefe therein, but did not buy it.    The tender of the deed executed by the mining company to plaintiff was objected to upon the ground that the contract called for a deed from Dyer, while the deed offered was that of a stranger to the contract; but the objection was overruled.    The deed mentioned purports to grant, bargain and sell, as well as quitclaim, the premises to plaintiff.

The court found that the mining company, since the commencement of the suit, had made and tendered to the plaintiff a deed of the property; that the property is mining ground, and that there was no evidence of its value; that there was no evidence to show that plaintiff had suffered any damages by reason of the technical breach of the bond; and that the sum named in the instrument sued upon was intended at the time it was executed as a penalty, and not as liquidated damages; and that plaintiff had suffered nominal damages only. From these findings of fact the court drew the conclusions of law that plaintiff was entitled to have the deed of the mining company delivered to him; that he should have judgment for

one dollar damages and costs; and that the sum named in the obligation was a penalty, and not liquidated damages. From this judgment, plaintiff appeals.

*L. P. Sanders* and *C. H. Cooper*, for Appellant.

*H. N. Blake*, for Respondents.

PIGOTT, J.—1. The second assignment of error is directed to the finding that plaintiff suffered nominal damages only by reason of the breach of the condition of the bond, plaintiff asserting that the pleadings and proof show the breach to have been substantial, and that no title whatever was offered to him. The fourth assignment is that the court erred in finding, as a conclusion of law, that the sum named in the contract is a penalty, and not liquidated damages. These assignments will be considered together.

If, as defendants claim and the trial court found, the sum named in the bond is a penalty, plaintiff can, upon a breach, recover nothing beyond that which will compensate him for his actual loss. Unless proof be made of the amount of injury suffered, he cannot recover more than nominal damages; and, again, if the sum be penal, doubtless plaintiff might bring an action upon the promise implied from the condition, and, by laying damages beyond that sum, recover, as against the principal, his actual damages, though in excess of the penalty expressed. (*Noyes* v. *Phillips*, 60 N. Y. 408; 13 Am. & Eng. Enc. Law, 867, and cases cited.) On the other hand, if the sum be for liquidated damages, as plaintiff claims, no controversy can arise in respect of the quantum of damages, for the reason that the parties have agreed in advance upon a definite sum as that which shall be paid in compensation by the party committing a substantial breach of the condition. (Sedg. Dam. Section 394.)

The great principle underlying the law of damages is that of compensation—exact reimbursement for loss sustained; and hence, while within limits not easily defined in practice, the law will enforce an agreement made between parties to a

contract by which they fix in advance a certain amount as the damages which will result from a breach of the contract; yet it requires, as the condition of enforcement, that the intention of the parties to that effect clearly appear by their words, or be manifestly deducible from the circumstances or subject matter of the contract.

Upon this principle, a bond by which the obligor binds himself in a sum of money for the performance of the condition thereof is *prima facie* a penal obligation; and the burden of proving that the sum named was intended as liquidated damages rests upon the party alleging such intention. (*Tayloe* v. *Sandiford*, 7 Wheat. 13); in other words, the sum is not treated as liquidated damages unless the language used in the instrument, or the circumstances existing at the time it was made, show that such was clearly the intention of the parties. (*Turck* v. *Marshall Silver Mining Co.*, 8 Colo. 113, 5 Pac. 838.) Resting upon this principle is the further rule, which is a corollary of the doctrine just stated, that, if doubt exist as to the real intention of the parties, it will be resolved by treating the sum as a penalty, ''for the leaning of the court in case of doubt will be towards the construction that the provision is a penalty'' (Sutherland on Damages, Section 286; Sedgwick on Damages, Section 408); preferring that construction which will give just and full compensation rather than adopt that which, without reference to the actual damage, is arbitrarily settled before a breach is committed. (*Bearden* v. *Smith*, 11 Rich. So. Car., Law 554.) Another general rule growing out of the principle of compensation is that where the sum mentioned is wholly collateral to the object of the contract, being inserted merely as a security for the performance, it is a penalty, and will not be allowed as liquidated damages (Sedgwick on Damages, Section 410); or, to state the rule more fully, where a sum of money is mentioned in a covenant or agreement merely to secure the enjoyment of a collateral object, the enjoyment of the object is considered as the principal intent of the contract or covenant, and the sum of money but as accessory, and therefore only to

secure the damages really incurred. (*Barton* v. *Glover*, Holt, *Nisi Prius* 43, note.)

Applying these principles to the contract before us, we discover nothing in its terms warranting the inference that the parties intended $1,000 as the exact amount of damages which plaintiff would suffer from a breach of its condition. The language used does not include any expression indicating such intention. The sum mentioned is not designated as stipulated damages, nor is any similar term employed; and, while its absence does not in all cases preclude the court from treating the sum as liquidated damages, still such omission is, ordinarily, significant of the understanding of the parties at the time the contract was made. There is no presumption in the law that damages, resulting from the breach of an obligation to convey a mining claim, cannot be calculated by market value, or estimated by reference to pecuniary standards; nor is there a presumption that it would be impracticable or extremely difficult to fix the actual damage in such case. It is not to be presumed that the value of a mining claim is incapable, impracticable, or extremely difficult of ascertainment. True, evidence of a character different from that adduced to show the value of lands used for purposes other than mining may be required, and its procurement may be attended with difficulty and expense; but, nevertheless, the law does not raise, and the courts do not indulge, the presumption that proof of the value of such a claim is impracticable. In the absence of exceptional circumstances, a promise to pay a certain sum of money if the promisor fail to perform his agreement to convey land is mere security and a penalty (*Dooley* v. *Watson*, 1 Gray, 416); and this rule is applicable to mines as well.

The question as to what the rule would be in the case of a contract to buy and sell such property is not before us; for here there was no agreement for a sale, nor had there been a purchase by Dyer from plaintiff, followed by a promise on the part of Dyer to reconvey. The main object of the parties was to obtain a patent for certain mineral lands, then held by

defeasible title.    Dyer was about to apply for a patent for certain lode claims, and had included in the survey some ground claimed by plaintiff.    The execution of the contract avoided the delay necessarily incident to proceedings in the land office and to suits in the courts.    That neither party contemplated the purchase by Dyer of the plaintiff's interest in the property is evident.    Dyer promised to quitclaim the ground of the plaintiff after patent issued; and, as mere security for the performance of his promise, Dyer and the other defendants bound themselves in the sum of $1,000. The contract was made as a matter of convenience in obtaining patent, and to serve as evidence of the right of plaintiff to certain of the ground to be included in that instrument. In *Turch* v. *Mining Co.*, *supra*, the Supreme Court of Colorado interpreted a similar bond with reference to the conveyance of a quartz claim, and reached the conclusion—which we believe correct—that the sum mentioned therein was a penalty.

Is there anything extraneous to the contract which would indicate the intention of the parties to agree in advance upon the amount of damages?    Counsel for plaintiff, in briefs which exhibit great industry, assume that the evidence established the difficulty of estimating the damages.    The only testimony touching the subject upon which the assumption of plaintiff is based is his own testimony, as follows: "It is impossible to tell what the value is.    It is a quartz claim, and there is no rule by which you can ascertain its value. * * * I don't know anything about the value of the ground."    We discover nothing in this which tends to support the contention that the value of the particular quartz claim owned by plaintiff is impossible or difficult of ascertainment.    The plain meaning and obvious effect of his testimony is: "It is impossible to ascertain the value of any quartz mining claim whatever. The ground described in the contract is such a claim.    Therefore its value cannot be ascertained."    He failed to state any fact from which the court could determine whether the opinion or conclusion of the witness was warranted.    It was not the duty of the court to believe the bald assertion of the plaintiff

to the effect that the value of all quartz mines, and of every one of them, is impossible of ascertainment. The inherent improbability of the statement may well deny to it credence. It did not appear that he had ever visited or inspected the claim, or caused it to be examined, nor was there any evidence of its condition as to development or its character otherwise. Nothing was shown which tended to prove that the value of the mine was difficult or impracticable of estimation.

To illustrate the unsoundness of plaintiff's contention in respect of damages, we may suppose that Dyer had violated the condition of the contract by conveying the mine to a purchaser for value and without notice, thus preventing the enforcement of specific performance; that afterwards the mine was ascertained to be worth many thousands of dollars; that in an action brought by plaintiff against Dyer alone to recover, for failure to perform the promise implied from the condition, damages equal to the value of the property, defendant insisted that the $1,000 mentioned in the contract was for liquidated damages, while plaintiff contended that the sum stated was a penalty; and that upon the trial defendant testified that it was impossible to ascertain the value which the mine possessed at the time the contract was made, because it was a quartz mining claim. Would the plaintiff under these circumstances be entitled to recover the value of the property, or merely the $1,000? It would seem that the recovery ought to be measured by the value of the mine, irrespective of the sum mentioned in the contract as security for performance of the condition.

For these reasons, we are of the opinion that the sum mentioned in the contract is a penalty.

2. The first and third assignments of error are to the effect that there was no evidence to prove that the Ontario Mining Company executed or tendered to plaintiff the deed filed with the answer, or that the signatures thereon were genuine, or that the officers were authorized to execute it; that the defense of novation was not proved; and that the deed mentioned was not offered in evidence.

The answer did not present the defense of, nor did the evidence tend to prove novation. We shall therefore proceed to examine the assignments in other particulars.

Turning to the record, we find that during the trial the court said to counsel for plaintiff : ''You have produced the contract. The defense is that they are ready to execute the deed called for by that bond, and you claim that you are entitled to the money instead of the deed.'' To this counsel for plaintiff made the answer : ''The bond calls for a deed from William Dyer. They offer one from the Ontario Mining Company.'' And counsel objected upon that ground to the tender made in the answer. The deed was tendered in the manner permitted by Section 3410, Code of Civil Procedure. These objections now urged for the first time by the assignments of error cannot avail plaintiff, for he failed to specify them when objecting to the tender made in the court below. The stating of one objection to the tender operates, under the facts of this case, as a waiver of all others. (Code of Civil Procedure, Section 3412; *Schultz* v. *O'Rourke*, 18 Montana, 431, 45 Pac. 634; *Carman* v. *Pultz*, 21 N. Y. 551.)

The objection that the deed was not offered in evidence is without merit, for the transcript fairly discloses that the parties and the court below treated the instrument as offered and received. Indeed, by stipulation incorporated into the transcript, the deed, referred to as being on file with the clerk, may be used in this court.

The Ontario Mining Company accepted a deed from Dyer to the land of plaintiff, subject to plaintiff's rights therein. It did not buy the property. Afterwards the plaintiff applied to the company, as the successor of Dyer, for its deed, which was tendered by Dyer with his answer. There was a breach of the obligation, but was it substantial ? As we have said, the object of the contract between Dyer and plaintiff was to obtain title to land then owned by the United States, and to provide for the transmission of title to plaintiff for the portion thereof equitably owned by him. In the absence of any showing that plaintiff has sustained damage, we are of the

opinion that, under the circumstances of this case, the tender was not open to the objection urged in the trial court; for the purpose of the parties was clearly manifested by the terms of the contract, and was further evidenced by the failure of plaintiff to demand a deed of Dyer after patent, and the request made by plaintiff that the company convey to him. That purpose was to secure to the plaintiff the legal title in addition to his equitable ownership. The company was the holder of the naked legal title to the property owned by plaintiff. It was the successor to, and in privity with Dyer. There is an utter lack of evidence to show that the object of the parties would not be as well subserved by a deed from the company, as the medium of transmitting title, as it would by one from Dyer. There was no pretense that the conveyance from the company will not grant full title to plaintiff, or, at least, all that Dyer could have granted had he made the conveyance to plaintiff at the time it became his duty to do so. There was no actual damage sustained on account of delay, or by reason of the substitution of the name of the grantor; and there is nothing to show that the rights of the plaintiff have been or will be affected by the change in such name. The breach was merely technical.

It follows, therefore, that plaintiff was not entitled to recover more than nominal damages, even though the $1,000 were intended as liquidated damages to be paid for a substantial violation of the condition expressed in the contract.

The judgment of the District Court is affirmed.

*Affirmed.*

PEMBERTON, C. J., concurs.