## UNITED STATES v. HOLE et al.
### No. 25.

District Court, D. Montana,
Great Falls Division.

April 7, 1941.

John B. Tansil, U. S. Dist. Atty., of Billings, Mont., and William D. Murray, Asst. U. S. Dist. Atty., of Butte, Mont., for plaintiff.

John G. Brown and William A. Brown, both of Helena, Mont., for defendants.

PRAY, District Judge.

The purpose of the above-entitled action is to enforce the provisions of a written contract entered into by the plaintiff with the defendant B. V. Hole, known as an oil and gas lease of Tribal Indian land on the Blackfeet Indian Reservation, Glacier County, Montana, the performance of which on the part of the latter was guaranteed by the defendant, Standard Accident Insurance Company. The lease was duly executed by the respective parties and approved as required December 23, 1935.

Among the material allegations set out in the complaint was one to the effect that drilling operations by defendant Hole was to commence within 90 days after approval of lease, which time was thereafter extended to May 7, 1936; that defendant Hole is in default in the performance of the provisions of said lease in that he did not begin drilling operations within the time agreed upon, and that plaintiff has suffered damages in the sum of $1,500, which was also agreed upon in the lease, no part of which has ever been paid. The answer denies the damage or that defendant is in default and alleges that on or about April 6th, 1936, defendant Hole entered into an agreement with one A. E. Ottman to begin drilling operations under the lease within 15 days thereafter, and did not know that Ottman had failed to perform his agree-

ment until on or about May 25th, 1936; that thereafter he negotiated with one A. B. Cobb to begin drilling operations, but that he "was dissuaded from proceeding with said negotiations and was prevented from drilling said wells by action of the Blackfeet Tribal Council and the agents of the plaintiff herein and statements made by said Blackfeet Tribal Council and the members thereof, and plaintiff's agents, to the effect that they intended to cancel the said oil and gas lease and all of the rights of the defendant, B. V. Hole therein, * * * but said defendant, B. V. Hole, was prevented from drilling said wells by the action of the plaintiff herein and the Blackfeet Tribal Council in asserting the alleged forfeiture and cancellation of said oil and gas lease."

The immediate questions before the court are on the motions for judgment on the pleadings filed by both parties to the action.

The language of the lease directly in question is:

"(4) The lessee agrees to begin drilling operations on the land covered by this lease within ninety (90) days from the date of approval hereof by the Secretary of the Interior and to drill at least (two) wells on the premises within one year from the date of such approval; and to drill two wells during each successive year thereafter until as many wells have been drilled as there are forty acre tracts or fractional parts thereof included in the lease; and thereafter to diligently drill such additional wells as may be necessary and proper in the judgment of the Secretary of the Interior to fully develop the land and extract the oil and gas therefrom in accordance with the most approved methods of drilling development in the fields where the lands are located. It is further understood and agreed that the completion of a well is to be considered a minimum depth of one hundred (100) feet into the Madison limestone, unless production in paying quantities is found at a lesser depth.

"If the Lessee shall fail to drill any or all of the wells as herein provided, such failure shall be a violation of one of the material and substantial terms and conditions of this lease and be sufficient cause for cancellation of this lease, but such cancellation shall not in any way serve to release or relieve the lessee or surety from the covenants and obligations to pay any accrued obligation, Provided, That the Secretary of the Interior may, in his discretion, upon application of the lessee, extend the time within which any well shall be commenced upon the payment of annual rental of one dollar per acre, for each whole year the beginning of such well is delayed. For the guidance of the Secretary of the Interior, the Blackfeet Tribal Business Council will be consulted as to its opinion in this matter. It is further understood and agreed that if the lessee shall fail or refuse to drill as provided herein, or fail to obtain an extension of the time within which to drill he shall pay to the officer in charge, for the benefit of the Blackfeet Tribe of Indians, the full amount for which this lease is bonded."

The bond accompanying the lease provided, among other things, that principal and surety "are held and firmly bound unto the United States of America in the sum of fifteen hundred dollars * * * for the payment of which, well and truly to be made, we bind ourselves, etc." Also: "Now, if the above bounden B. V. Hole shall faithfully carry out and observe all the obligations assumed in said indenture of lease by him and shall observe all the laws of the United States, and regulations made, or which shall be made thereunder, for the government of trade and intercourse with Indian tribes, and all the rules and regulations that have been or may be, lawfully prescribed by the Secretary of the Interior relative to leases executed on the Blackfeet Indian Reservation, in the state of Montana, then this obligation shall be null and void; otherwise to remain in full force and effect." The lease and bond were approved by the Secretary of Interior December 23rd, 1935. The contention of the defendant is that the sum named in the contract is intended as a penalty and not as liquidated damages.

■ The oil and gas lease under consideration in Blodget v. Columbia Live Stock Co., 9 Cir., 164 F. 305, contained the following provision: "In the event the above lease shall be cancelled through the default of the lessee, before the lessee shall have completed a well to the depth of 1,200 feet, or discovered pay oil or gas at a lesser depth, under the conditions as hereinbefore provided, the lessee hereby obligates himself to either forthwith complete said well, or forfeit the sum of $1,-500 as liquidated damages for such default." The court held in that case that the damages for a breach of such provision

being necessarily indefinite, uncertain and speculative, it is competent for the parties to fix the amount of such damages by mutual agreement, and a provision that in case of the failure of the lessee to drill such well he shall pay a stated sum as liquidated damages is valid and enforceable. See, also, Sun Printing & Publishing Association v. Moore, 183 U.S. 642, 672, 22 S.Ct. 240, 252, 253; 46 L.Ed. 366, wherein it was held that when the parties "declare, in distinct and unequivocal terms, that they have settled and ascertained the damages to be $500.00, or any other sum, to be paid by either failing to perform, it seems absurd for a court to tell them that it has looked into the contract and reached the conclusion that no such thing was intended; but that the intention was to name the sum as a penalty to cover any damages that might be proved to have been sustained by a breach of the agreement." United States v. Bethlehem Steel Company, 205 U.S. 105, 118, 27 S.Ct. 450, 455, 5 L.Ed. 731; Escondido Oil, etc., Co. v. Glaser, 144 Cal. 494, 77 P. 1040; Sec. 7557, R.C. Montana; Wise, Trustee, v. United States, 249 U.S. 361, 365, 366, 367, 39 S.Ct. 303, 63 L.Ed. 647; J. E. Hathaway & Co. v. United States, 249 U.S. 460, 464, 39 S.Ct. 346, 63 L.Ed. 707.

In Davidson v. Hughes, 76 Kan. 247, 91 P. 913, 914, an oil and gas lease in dispute provided: "The lessees agree to commence drilling a well on the land above described, one well in (3) months, 2 additional within one year from the above date. If said lessees fail to complete 3 wells within 12 months, as above provided, then and in that case said lessees agree to pay $500.00 (as a forfeit) to said lessors at the expiration of that time." The lessees failed to do anything under the lease for more than 12 months. The court held in that case: "The language of the contract is of itself not conclusive. The consideration for the contract at its inception was only $1, and it is apparent that the real inducement which led the owners of the land to make the grant was the promise of the grantees to do the stipulated things within the stipulated time. Performance thereof might result in great profit to the grantees, and failure to perform and the exclusion of all other prospectors from the premises, who might desire to purchase the privileges, may, under the circumstances, be presumed to have resulted in damage. The extent of such damage could only be conjectural, and would be difficult, if not impossible, of specific pleading or specific proof. In view of these evident considerations, we think the parties agreed upon the payment of $500 as liquidated damages in case of default by the grantees, and it seems not an unreasonable, but a very reasonable, provision under the circumstances." Many authorities are cited in the opinion to sustain the views therein expressed. The consideration contained in the lease in question at the time of execution was also $1.

In Ellis v. Simmons, 5 Cir., 11 F.2d 596, defendants were held liable for full amount of bond given to guarantee performance of contract to drill oil well as liquidated damages, not being able to determine actual damages.

The court has considered the case of O'Keefe v. Dyer, 20 Mont. 477, 52 P. 196, and finds the facts are different; in that case there was a substantial compliance with the agreement, and furthermore the court held the damages were capable of ascertainment; the plaintiff was not deprived of his interest in the property involved, although the defendant had not followed the exact letter of the agreement. A good and sufficient deed of plaintiff's interest in the claim was tendered by defendant with the answer. The bond given in that case was held to be "mere security" for the performance of the promise to convey that part of the property belonging to plaintiff when the defendant received a patent from the government which was expected to include the lands of both plaintiff and defendant, although issued in the name of the defendant.

A motion for judgment on the pleadings is permitted by Federal Rules of Civil Procedure, rule 12 (c) 28 U.S.C.A. following section 723c, but is proper only when no issue of fact is raised by the pleadings. Kadylak v. O'Brien, D.C., 32 F.Supp. 281. It has been held: "When a party moves for judgment on the pleadings, he not only for the purposes of his motion admits the truth of all the allegations of his adversary, but must also be deemed to have admitted the untruth of all his own allegations which have been denied by his adversary." Wyman v. Wyman, 9 Cir., 109 F.2d 473, 474.

In Central Trust Co. v. Second National Bank, D.C.W.D.Pa. Feb. 23, 1939, 1 F.R.D. 98, 99, the court said: "The reason assigned by defendant in support of its motion is: an insufficient denial by

plaintiff of paragraph 10 of defendant's answer. A reply under the Rules of Civil Procedure is required if the answer contains a counterclaim, denominated as such, and also, where the court orders a reply to an answer. Rule 7 (a). The defendant did not aver in his answer a counterclaim, and this court did not require, a reply to the answer filed."

It is provided in Rule 8 (d) that "Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."

■ After a consideration of the facts as presented by the complaint and the answer, and the respective motions for judgment on the pleadings, taking into account that the movant in each case admits the well-pleaded facts of his adversary, it then becomes necessary to determine whether there are material questions of fact raised by the pleadings. There can be no doubt as to the materiality of the facts alleged in the complaint and admitted by defendant's motion. But are the facts of the answer, admitted by plaintiff's motion and set forth in the nature of a plea in confession and avoidance, of material consequence in this action. The time granted in the lease had been extended to a date certain, which had expired, and about 3 weeks subsequent to the expiration date, the defendant claims that he would then have been able to commence his drilling operations but for the objections raised by members of the tribal council of Indians interested in the lease. Were their objections based upon the ground that the date for beginning operations had long since expired, after an extension had been granted—it so appears from the answer. If the court could find material questions raised in the answer, plaintiff could be required, under the rule, to file a reply, at the same time denying both motions for judgment on the pleadings.

It seems quite evident from rule 7 (a) of the Federal Rules of Civil Procedure that the answer does not require a reply, and besides it does not appear that a material issue has been raised thereby.

■■ It clearly appears that neither the defendant Hole nor any of his associates were prevented from beginning drilling operations during the time specified in the contract or the extension thereof to May 7th, 1936, nor was he prevented from seeking a further extension of time as provided in the lease if he so desired. The allega-

tions of the answer as well as those of the complaint show that defendant Hole was in default, and the attitude of the Tribal Council furnishes further evidence of that fact. Time was of the essence of the contract, and the lessee and his associates had failed in performance.

Taking into account the facts presented and the rules that apply, in the opinion of the court plaintiff's motion for judgment on the pleadings should be granted and it is so ordered, and defendants' motion is hereby denied.