## GARMAN v. METROPOLITAN LIFE INS. CO.
### No. 9176.

District Court, D. New Jersey.
Aug. 8, 1947.

Quinn, Doremus, McCue & Russell and William L. Russel, Jr., all of Red Bank, N. J., for plaintiff.

McCarter, English & Studer and Nicholas Conover English, all of Newark N. J., for defendant.

FORMAN, District Judge.

The defendant, Metropolitan Life Insurance Company, on March 14, 1944 issued a policy of life insurance in the amount of $5,000 upon the life of Harry Garman, who died November 21, 1945. Upon failure of the defendant to pay the claim, Anne Garman, wife of the insured and benficiary in the policy, instituted a suit on it in the New Jersey Supreme Court, which afterwards was removed to this court. Defendant filed an answer setting up fraud at law and a counterclaim for cancellation of the policy on the basis of equitable fraud committed by the deceased in representations made in his application for the policy. The plain-

tiff filed a reply and demanded a jury trial. The defendant moved to strike out the plaintiff's demand for a jury trial on the ground that is was not filed within time or in the alternative for an order directing a separate trial by the court sitting without a jury on the issues raised by the counterclaim and reply, before the trial of the issues raised by the complaint and answer. Defendant also moved to strike interrogatories filed by the plaintiff the relevancy of which it questioned.

The defendant contends that its counterclaim alleges statements made by the insured which fall into the classification of "honest misrepresentations", proof of which would be inadmissable in an action at law in New Jersey, where representations known to be false to the insured and acted upon by the insurer, are matters of defense and misrepresentations made by the insured without knowledge of their falsity are not. The latter are said to be cognizable for the purposes of relief, by way of cancellation or rescission, in equity. Hence they are set up by defendant in its counterclaim as the basis for a prayer that the policy of insurance in suit should be decreed to be canceled.

It further contends under Rule 42(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the court should grant a separate trial of the counterclaim before the trial of plaintiff's claim because it would be in furtherance of convenience and in the advancement of justice. This contention is based upon the reasoning that if the defendant cannot prove successfully the elements alleged in the counterclaim it cannot succeed in the legal defense in any event. Furthermore, if defendant succeeds only in proving innocent misrepresentations by the insured without proving that they were knowingly made with intent to deceive and although there is a decision in favor of plaintiff the controversy would not be terminated as defendant would still be entitled to press for its equitable relief under its counterclaim. It cited cases to support its contention that the prevailing practice of the federal courts required the trial of an equitable issue first.

The defendant admits that its theory does violence to the decision of the Third Circuit Court of Appeals in the case of Ettelson and others against it which is reported in 1943, 137 F.2d 62, but claims this was overruled by the United States Supreme Court in the case of Guaranty Trust Co. v. York, 1945, 326 U. S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231.

The Ettelson case was tried in this court, as reported in D.C., 1941, 42 F.Supp. 488. Similarly, as in the case at bar, it was instituted to recover the proceeds of life insurance policies to which the defendant answered by setting up the defense of fraud in the application and also filed a counterclaim seeking equitable relief by way of rescission of the policies on the ground of fraud in the application. The matter came before the trial court on a motion by plaintiff to strike out the counterclaim.

The trial court found that the law as laid down by the New Jersey courts is that false representations, made without knowledge of their falsity or without intent to deceive, do not constitute a defense at law but may be the basis of relief only in equity. Guided by the case of Erie R. Co. v. Tompkins, 1938, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, it felt itself bound to follow the New Jersey law holding that scienter is a necessary element in a legal defense to fraud, a burden a defendant does not have to carry in the equity court of New Jersey. Hence, it determined that the defendant's legal remedy was not adequate, that matters relating to the burden of proof were matters of substance, and that the motion to strike out and dismiss the defendant's counterclaim should be denied.

On appeal the decision of the district court was reversed. The appellate court held that the division of function between court and jury is to be made by federal and not state law and that the rule in the case of Erie R. Co. v. Tompkins did not affect the procedure in the case. It held that prior to the adoption of the Federal Rules of Civil Procedure and since, all that may be included in the term fraud, whether characterized by the adjective "legal" or "equitable", was and is appropriate defense and triable to a jury.

In the case of Guaranty Trust Co. v. York, supra, it was held that the federal

court was bound to follow the statute of limitations of the State of New York. It was further held that the essence of the intent of the decision in Erie R. Co. v. Tompkins was to insure that in all cases where a federal court was exercising jurisdiction solely because of diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of litigation, as it would be, if tried in the state court.

In its analysis of the opinion of the Second Circuit Court of Appeals in the Guaranty Trust Co. case, 1944, 143 F.2d 503, defendant argued that there is a marked similarity in the position taken in the opinion of the dissenting judge in that case and the opinion of the Third Circuit Court of Appeals in the Ettelson case. It contended that the Supreme Court in its decision in the Guaranty Trust Co. case overruled the position in the dissenting opinion and, therefore, in effect, overruled the opinion of the Third Circuit Court of Appeals in the Ettelson case.

Furthermore, the defendant contends that the decision in the Ettelson case was wrong in principle when it held that the issues raised by a counterclaim seeking the equitable remedy of cancellation of a contract on grounds cognizable solely by a court of equity in New Jersey should be tried as a defense to defeat recovery of money under a contract.

The defendant also asserted that if the outcome of the litigation in the federal court was to be the same as if tried in the state court the form of the relief awarded to the successful party was not to be ignored. It submitted that the denial of a money judgment to the plaintiff would not be the equivalent of a decree granting cancellation of the policy and questioned whether the plaintiff would be barred from relitigating her claim or that the suit would constitute res adjudicata in further actions.

The foregoing are the main points in defendant's argument designed to re-enforce its contention that the Ettelson case is wrong in principle and erroneously decided by the Third Circuit Court of Appeals. Other points were made and many cases were cited to bolster the argument but the fact is that there was no statute of limitations involved in the Ettelson case as in the Guaranty Trust Co. case. There the original action was brought on the equity side of a federal district court and the question turned on whether the federal court was required to apply a state statute of limitations that would govern a like suit in the courts of a state where the federal court was sitting, even though the exclusive basis of federal jurisdiction was diversity of citizenship. The United States Supreme Court commanded the federal court to respect such state enactment.

In the Ettelson case no such basis for a claim of right is involved. The court recognized all of the fundamental rules concerning distinction of proof with regard to misrepresentations knowingly made with intent to deceive and innocent misrepresentations and their implication respectively as legal and equitable defenses. It held that Erie R. Co. v. Tompkins did not affect the procedure in the case.

The court said:

"Having concluded that the rule of Erie R. Co. v. Tompkins does not affect the procedure in the pending case, the final question is whether the defendant is entitled to have its counterclaim tried by the court, as though the judge was sitting in equity, before the present rules, or whether the plaintiffs are entitled to have the issue tried by a jury. Although under the Federal Rules of Civil Procedure claims and defenses formerly cognizable either at law or equity have been merged into one action, a civil action, the rules have neither enlarged nor diminished the right to either a jury or court trial. Basic issues formerly triable as of right by a jury are still triable by a jury as a matter of right. Rule 38, 28 U.S.C.A. following section 723c. The same obtains where the right previously existed to have an issue tried by the court. We must then inquire whether prior to the adoption of the Federal Rules of Civil Procedure a defense of 'equitable' fraud to an action for the proceeds of a life insurance policy was within the exclusive jurisdiction of equity. If it was, then there is no right to the jury trial demanded and defendant's contention that the matter raised in the counterclaim should be tried

by the court must be sustained, not because of Erie R. Co. v. Tompkins, but because that is the federal court law on the subject.

"We turn then to the federal decisions. The general rule pronounced by the Supreme Court is that in insurance cases, in the absence of special circumstances, which are not present here, 'fraud in the procurement of insurance is provable as a defense in an action at law upon the policy, resort to equity being unnecessary to render that defense available.' American Life Ins. Co. v. Stewart, 1937, 300 U.S. 203, 212, 57 S.Ct. 377, 379, 81 L.Ed. 605, 111 A.L.R. 1268, citing Enelow v. New York Life Ins. Co., 1935, 293 U.S. 379, 385, 55 S.Ct. 310, 79 L.Ed. 440; Adamos v. New York Life Ins. Co., 1935, 293 U.S. 386, 55 S.Ct. 315, 79 L.Ed. 444; Insurance Co. v. Bailey, 1872, 13 Wall. 616, 20 L.Ed. 501; Cable v. United States Life Ins. Co., 1903, 191 U.S. 288, 306, 24 S.Ct. 74, 48 L.Ed. 188.

"In none of these decisions, however, is the distinction between 'legal' and 'equitable fraud' expressly drawn. The defendant has urged that the cases involved 'legal fraud' and the rule laid down applied only in such instances. With this contention we do not agree. We find federal decisions going back for more than a hundred years in which, in suits on insurance policies, the question of fraud whether consisting of conscious or innocent misstatement or non-disclosure has been tried by a jury in an action at law on the policy. Three of the decisions to this effect were written by no less an eminent authority on equity jurisprudence than Justice Story. McLanahan v. The Universal Insurance Co., 1825, 1 Pet. 170, 185, 7 L.Ed. 98; Carpenter v. American Ins. Co., C.C.D.R.I., 1839, 5 Fed.Cas. page 105, No. 2,428; Hazard v. New England Marine Ins. Co., C.C.D. Mass., 1832, 11 Fed.Cas. No. 6,282, page 937, reversed on other grounds, 1834, 8 Pet. 557, 8 L.Ed. 1043, but expressly affirming the point involved here, 8 Pet. at page 583, 8 L.Ed. 1043. See also Carrollton Furniture Mfg. Co. v. American Credit Indemnity Co. of New York, 2 Cir., 1902, 115 F. 77, affirmed on rehearing, 2 Cir., 1903, 124 F. 25, certiorari denied, 1904, 192 U.S. 605, 24 S.Ct. 849, 48 L.Ed. 585.

"Our conclusion is, therefore, that the federal rule is as broad as its statement and covers all that may be included in the term fraud, whether characterized by the adjective 'legal' or 'equitable'. The issue on such a defense was tried by a jury prior to the present rules; it continues to be so triable since.

"The order of the District Court is reversed and the case remanded for further proceedings in accordance with this opinion." 137 F.2d at pages 65, 66.

We see no inconsistency in this decision and that of the United States Supreme Court in the Guaranty Trust Co. case. No argument the defendant makes shakes its reasoning. In the face of defendant's inferential arguments from the Guaranty Trust Co. opinion and futile attacks upon the principle of the Ettelson case only, we have no alternative but to give it the usual regard expected of an inferior tribunal. The plaintiff is entitled to a jury trial in which the defendant may set up its defenses of both legal and equitable fraud.

Defendant objected to the demand for jury by plaintiff as being filed unseasonably and refers to Rule 38(b) of the Federal Rules of Civil Procedure: "Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party."

The complaint was docketed in this court from the New Jersey Supreme Court on October 28, 1946. The answer and counterclaim were filed on October 31, 1946. Plaintiff filed a "reply" to the counterclaim on November 19, 1946 and its demand for jury on November 26, 1946. Defendant argues that the demand should have been made within 10 days of the filing of defendant's answer to the complaint that being the last pleading in the law action. This proposition assumes that the counterclaim is distinct from the answer and that only the complaint and answer presented a matter for the jury. This argument is in

conflict with the Ettelson case and our holding herein, because under the authority of that case the counterclaim also presents an issue triable by jury in the federal court. The demand having been filed within 10 days from the service of the reply, the last pleading directed to the issue also to be tried by jury, it was within time as provided in Rule 38(b).

■ Defendant also moved to strike interrogatories served upon it by plaintiff. These were 12 in number. Interrogatories 1, 2, 11 and 12 have been disposed of without controversy but 3 to 10 are still resisted by defendant. In general they seek information from defendant regarding facts obtained by it on examination of the insured by its medical director, facts obtained by it on its investigation of insured's social, medical and financial background and additional information obtained by it concerning the insured besides that contained in the application. Defendant asserts these interrogatories are objectionable on the ground that they seek information which would be inadmissible evidence. It refers to § 8 and § 9 of the policy which provide that the policy and application constitute the entire contract between the parties, that "no statement should avoid this Policy * * * unless it is contained in the application * * *" and that no agent is authorized to alter or amend the policy. Defendant also refers to the application which provides at the conclusion of Part A and above the signature of the insured that the foregoing statements and answers are correct and together with the answers contained in Part B shall form the bases of the contract if issued, that no agent except an officer of the company shall have power

"a. to make, modify or discharge any contract of insurance, or

"b. to bind the company by making any promises respecting any benefits under any policy issued hereunder."
and that "No statement made to or by, and no knowledge on the part of any agent, medical examiner or any other persons as to any facts pertaining to the applicant shall be considered as having been made to or brought to the knowledge of the Company unless stated in either Part A or Part B of this application."

Numerous authorities are cited to show that both the plaintiff and the insured are bound by the above provisions of the contract, and for that reason it is claimed that the extrinsic matter sought by the interrogatories is inadmissible.

An additional objection to interrogatory 3 requesting a disclosure of facts made by defendant's medical examination is based on Metropolitan Life Ins. Co. v. Coddington, 1942, 131 N.J.Eq. 430, 26 A.2d 41. There the suit was brought to cancel a life insurance policy for fraud, and the beneficiary contended that inasmuch as the company had had its own medical director examine the insured, before issuing the policy, it must not, therefore, have relied upon the insured's answers as recorded in the application. The proofs indicated that the insurance company relied upon the answers of the insured, and this contention was overruled. This case is not authority for the proposition that facts discerned by defendant's medical examiner are immaterial.

Plaintiff relies upon the case of John Hancock Ins. Co. v. Cronin, 1947, 139 N.J. Eq. 392, 51 A.2d 2, in answer to defendant's objection. There, the insurance company sued for rescission on the ground of fraudulent misrepresentation and sought to restrain the beneficiary's suit at law on the policy. The court stated that independent investigation by the insurer would not absolve the insured from speaking the truth, unless the investigation exposed the falsity of the representation of the application, or imposed upon the insurer the duty of further inquiry. The court concluded: "We find that misrepresentations were made by the insured; they were material and purposely made and were relied upon by the company. The independent investigation voluntarily undertaken by appellant did not disclose any facts from which the company knew or could by reasonable diligence have known of the true nature of the misrepresentations." 139 N.J.Eq. at page 398, 51 A.2d at page 5.

The plaintiff shows that the court in the Cronin case had before it the same limitations with respect to matters extrinsic to the application and policy as are involved here. We feel that on the basis of the

Cronin case the plaintiff is entitled to inquire into the examination conducted by defendant as covered by interrogatory 3 and into the other examinations, investigations, inquiries and information covered by interrogatories 4 to 10. It may develop later that those examinations and information gained thereby are immaterial but we cannot say anticipatorily that the information sought is completely barred by the provisions relating to extrinsic evidence.

The case should proceed to trial to a jury as set forth in Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 1943, 137 F.2d 62, and the interrogatories 3 to 10 should be answered. An order should be taken in conformity herewith.