Mildred S. CURRY, Appellant,

v.

**PYRAMID LIFE INSURANCE COMPA-
NY and Home Savings Association
of Kansas City, Appellees.**

**No. 16170.**

United States Court of Appeals
Eighth Circuit.

Oct. 8, 1959.

Rehearing Denied Nov. 4, 1959.

**2**

Keith Martin, Kansas City, Mo. (James E. Campbell, Kansas City, Mo., and Donald B. Clark, Wichita, Kan., on the brief), for appellant.

Terence M. O'Brien, Kansas City, Mo., for appellee, Pyramid Life Ins. Co.

Before WOODROUGH, VAN OOSTERHOUT and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The Pyramid Life Insurance Company, appellee herein, issued a policy of insurance on the life of Thomas C. Curry, effective on April 1, 1956. Curry died on April 17, 1957. The immediate cause of his death was coronary occlusion due to hypertension. Mildred S. Curry, wife of the insured and the named beneficiary, instituted this action in the Missouri state court to recover the sum of $9,700, the amount due on the face of the policy, with additional claims for penalties and attorney fees. Because of diversity, the action was timely removed to the United States District Court. Trial by the Court without a jury resulted in a judgment against Mrs. Curry who has appealed to this court. The trial court also found that the alleged assignment to Home Savings Association of Kansas City, subsequently referred to as Home Savings, was without consideration and void. Home Savings, however, is not a party to this appeal.

At the outset, we are confronted with plaintiff's contention that the trial court committed prejudicial error in denying her request for a jury trial. The background for the court's action in this respect is: On October 10, 1957, and after the cause had been removed to the United States District Court on September 19, 1957, Pyramid Life Insurance Company (for brevity referred to as defendant or Pyramid) filed its answer in which it set up the affirmative defense of fraudulent representations by the insured as to material matters, upon which Pyramid had relied in issuing the policy. On November 5, 1957, pursuant to leave, Pyramid filed what it styled a counterclaim against plaintiff and Home Savings. The counterclaim incorporated the same allegations with respect to fraudulent representations that were contained in its answer. Additionally, the counterclaim alleged that the policy of insurance had been assigned to Home Savings to secure payment of a loan upon which there was approximately $9,000 due; that Home Savings had filed a claim against Pyramid for the proceeds of the policy; that the policy provided that it would be incontestable two years from date of its issue; that Home Savings had not filed suit to recover on the policy and might delay commencement of such an action until the period for contest had ended; that defendant might be exposed to double litigation unless Home Savings, an indispensable party, is brought in as an additional party defendant. The counterclaim prayed that Home Savings be made an additional defendant on the counterclaim, that plaintiff and the additional defendant be enjoined from instituting any action on the policy; and for cancellation of the policy.

Plaintiff's reply to the counterclaim, filed on November 12, 1957, was in the nature of a general denial of all material allegations set up in the counterclaim.

On the same day plaintiff, for the first time, filed demand for jury trial.

In denying the request, the trial court entertained the view that the counterclaim raised the same issues presented by Pyramid's answer to the complaint, except that it alleged as to Home Savings, the assignee, that the policy contained an incontestable clause, and found that the only new issue injected into the case by the counterclaim was purely equitable. The court concluded that under the existing circumstances Pyramid's action for cancellation of the policy was an equitable one triable to the court, and no right to trial by jury of that issue was available to plaintiff.

In urging error, plaintiff presents two contentions: First, that the question must be resolved by resort to Missouri law, and that under § 376.580, V.A.M.S., no misrepresentation made in obtaining a life insurance policy shall be deemed material, unless the matter misrepresented shall have actually contributed to the contingency on which the policy is to become due, "and whether it so contributed in any case shall be a question for the jury." Second, that, in any event, her demand for a jury trial was proper and timely.

Before and since the doctrine promulgated in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, federal courts have regarded as controlling the principle that " * * * state laws cannot alter the essential character or function of a federal court. The function of a trial judge in a federal court is not in any sense a local matter, and state statutes which would interfere with the appropriate performance of that function are not binding upon the federal court under either the Conformity Act or the 'rules of decision' Act." Herron v. Southern Pacific Co., 283 U.S. 91, 94, 51 S.Ct. 383, 384, 75 L.Ed. 857 (decided prior to Erie). More recently the Supreme Court considered the question in Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 538, 78 S.Ct. 893, 2 L.Ed.2d 953, rehearing denied 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375, stating at page 538 of 356 U.S., at page 901 of 78 S.Ct.: "It cannot be gainsaid that there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts." See also Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 137 F.2d 62, 64–65, certiorari denied 320 U.S. 777, 64 S.Ct. 92, 88 L.Ed. 467; Reuter v. Eastern Air Lines, 5 Cir., 226 F.2d 443, 445; Logan v. Holman, D.C.N.J., 7 F.R.D. 596, 597; Moore's Federal Practice, 2d Ed., § 38.-08 [6], 1958 Cumulative Supplement, § 38.09.

■ There being no merit to the first contention, the crucial question is whether under the provisions of Rule 38 of the Rules of Civil Procedure, 28 U.S.C.A., plaintiff was entitled "as of right" to a jury trial, and, if so, whether plaintiff's demand was timely. Resolution of this problem turns upon the effect of the counterclaim; that is, did it present only a purely equitable issue, triable to the court, and, if not, was it a pleading directed to the fraud issue, requiring plaintiff to reply thereto, as she did?

In ruling that the counterclaim presented a purely equitable issue triable to the court without a jury, it is apparent that the trial court relied upon the case of Peake v. Lincoln Nat. Life Ins. Co., decided by this court in 1926, and reported in 15 F.2d 303. There, the insurance company instituted an action in the United States District Court against the beneficiary and the assignee, seeking cancellation of the policy on the ground of fraud in the procurement thereof. Later the beneficiary filed suit in a state court of Missouri to recover the amount of the policy. The action was removed to the federal court, and thereafter the insurance company filed its supplemental bill in equity alleging, inter alia, that the assignee had not filed any disclaimer of interest in or ownership of the policy, but was making claim to the proceeds thereof; that the insurance company was of the belief that it was the purpose of the assignee to delay assertion in court of its claim until after the two years contestable period named in the

policy had expired, which would deprive the insurance company from setting up the defense of fraud and deceit of the insured in procuring the policy. The court was asked to enjoin the beneficiary from prosecuting her action at law and to enjoin the beneficiary and assignee from bringing any other action on the policy. The injunction prayed for was granted and both defendants (beneficiary and assignee) appealed. The appeal brought into focus the question of whether an equity action by the insurance company was proper, appellants contending that the beneficiary's claim was a legal demand and that the insurance company could make its defense of fraud to that action and thus had a remedy at law.

This court explicitly ruled that the insurance company had no remedy at law for the relief sought, that its action was purely equitable, and that the legal action by the beneficiary should be stayed until the equity suit was disposed of.

On re-examination, we are convinced that the Peake case, decided before the Federal Rules became effective, is out of step with the great weight of authoritative cases on the subject, particularly those postdating the promulgation of the Federal Rules, and that it does not control the instant situation. Subsequent decisions rule that the question of fraud, in connection with procurement of insurance policies, is essentially a legal issue, triable by a jury as of right, whether it be affirmatively alleged as grounds for cancellation of the policy, or raised as a defense to a suit brought by the beneficiary.

Enelow v. New York Life Insurance Co., 293 U.S. 379, 55 S.Ct. 310, 311, 79 L.Ed. 440, decided in 1935 and prior to the Federal Rules, although not involving an assignee, is very similar to the situation before us. There, as here, the beneficiary commenced a legal action to recover proceeds of the policy. There, as here, the insurer set up fraud in the procurement of the policy and sought cancellation thereof. Insurer then presented a petition asking that the "equitable issue," that is, cancellation of the policy, "be heard pursuant to section 274b of the Judicial Code (28 U.S.C. § 398 [28 U.S.C.A. § 398]) by a chancellor according to equity procedure in advance of the trial by jury at law of any purely legal issues." The trial court sustained this petition and the court of appeals affirmed. The Supreme Court reversed, stating at pages 384–385 of 293 U.S., at page 312 of 55 S.Ct.:

"The instant case is not one in which there is resort to equity for cancellation of the policy during the life of the insured and no opportunity exists to contest liability at law. Nor is it a case where, although death may have occurred, action has not been brought to recover upon the policy, and equitable relief is sought to protect the insurer against loss of its defense by the expiration of the period after which the policy by its terms is to become incontestable. Here, on the death of the insured, an action at law was brought on the policy, and the defendant had opportunity in that action at law, and before the policy by its terms became incontestable, to contest its liability and accordingly filed its affidavit of defense. That defense was solely that the defendant had been induced to issue the policy by false answers in the application which were alleged to have been made by the applicant 'with knowledge of their falsity and fraudulently' in order to obtain the insurance. * * * In such a case, the defense of fraud is completely available in the action at law, and a bill in equity would not lie to stay proceedings in that action in order to have the defense heard and determined in equity."

See also and compare, Adamos v. New York Life Insurance Co., 293 U.S. 386, 55 S.Ct. 315, 79 L.Ed. 444; Beacon Theatres, Inc. v. Westover, May 25, 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988; Johnson v. Fidelity & Casualty Company of N. Y., 8 Cir., 238 F.2d 322;

Leimer v. Woods, 8 Cir., 196 F.2d 828; Reliance Life Ins. Co. of Pittsburgh v. Everglades Discount Co., 5 Cir., 204 F. 2d 937, 942; Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 137 F.2d 62, certiorari denied 320 U.S. 777, 64 S.Ct. 92, 88 L.Ed. 467; Logan v. Holman, D.C. N.J., 7 F.R.D. 596; Garman v. Metropolitan Life Ins. Co., D.C.N.J., 7 F.R.D. 473, 476; Id., 3 Cir., 175 F.2d 24; Hargrove v. American Cent. Ins. Co., 10 Cir., 125 F.2d 225; Barnett v. New England Mut. Life Ins. Co., 5 Cir., 123 F.2d 712, 714.

■ The import of the foregoing cases is that the basic nature of the insurer's liability on the policy is legal and triable to a jury if timely demand is made. Fairly considered, we view the counterclaim as presenting the underlying legal question of fraud and deceit on the part of the insured for the purpose of procuring the policy. The allegations therein which the trial court concluded raised a purely equitable issue, i. e., the assignment of the policy, the two-year contestable period, the possibility of the insurer being subjected to another action after the contestable period had expired, with the result that Pyramid would be deprived of the right to rely upon fraud as a defense, were actually designed to demonstrate the indispensability of Home Savings as a party to the action. Having served its purpose in bringing the latter into the case as an additional defendant, the counterclaim, in seeking cancellation of the policy, was bottomed squarely on the fundamental issue of fraud. If Home Savings had joined with plaintiff in seeking recovery on the policy, and Pyramid had denied liability and prayed for cancellation of the policy, could it logically be asserted that there was an issue presented which deprived the plaintiff of a trial by jury? We believe not. Neither did the procedural aspects effectively convert the action to one in which only a court of equity could grant full and complete relief. The ultimate outcome herein depends upon a determination of the dominant issue of whether the policy is invalid because of fraud and deceit in the procurement thereof. When that issue has been resolved all rights of all parties will be fully set at rest.

■ There remains the decisive question of whether plaintiff waived her right to a jury trial by failing to file demand therefor within ten days after Pyramid filed its answer to the complaint. Under the circumstances we are persuaded to believe that plaintiff's reply to defendant's counterclaim, filed on November 12, 1957, was the "last pleading directed to such (fraud) issue" within the contemplation of Rule 38(b), and that the court was therefore compelled to grant plaintiff's request for a jury trial which was filed on the same date.

■ The contention that the fraud issue was raised by Pyramid's answer cannot be denied. But the issue was again raised in the counterclaim, which was directed to plaintiff as well as to Home Savings. With the counterclaim confronting her, plaintiff was under compulsion to file a reply thereto. Rule 7(a) of Federal Rules of Civil Procedure. In Edelman v. Locker, D.C.E.D.Pa., 6 F.R. D. 272, after the filing of a counterclaim, plaintiff, before filing a reply, moved to dismiss the same because it failed to state a legal cause of action. The motion was denied. The court then considered plaintiff's motion for judgment on the pleadings, and made this pronouncement, apropos here, at page 274:

"Rule 12(c) provides: 'After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.' Rule 7(a) provides, inter alia: 'There shall be a complaint and an answer; and there shall be a reply, if the answer contains a counterclaim denominated as such; * * *.' Under Rule 7(a) where the answer contains a counterclaim denominated as such, a reply by the plaintiff is mandatory, and, until the reply is filed, the

pleadings are not closed. See United States v. Hole, D.C.Mont., 38 F. Supp. 600."

Barron and Holtzoff, Federal Practice and Procedure, Vol. 1, § 243, at pp. 399–400, state:

"The time of the closing of the pleadings becomes important not only in determining whether further pleadings should be filed but in deciding whether a demand for a jury trial should be filed, whether an adversary has waived his right to a jury trial by failing to make a timely demand, * * *.

"A reply is required to a counterclaim, but not to any other allegations of the answer containing the counterclaim, and is the final pleading required or permitted."

See also, Moore's Federal Practice, 2d Ed., Vol. II, ¶¶ 7.02, 7.03.

Application of Rule 7(a) makes it clear that until plaintiff filed her reply to the counterclaim, the pleadings were open. That her reply, wherein she denied the fraud allegations, was the last pleading directed to such issue, is scarcely debatable; hence, it must follow that her application for a jury trial was seasonably made. See and compare Garman v. Metropolitan Life Ins. Co., D.C. N.J., 7 F.R.D. 473, 476–477; Monolith Portland Mid. Co. v. Reconstruction Finance Corp., 9 Cir., 240 F.2d 444, 448, certiorari denied 354 U.S. 921, 77 S.Ct. 1379, 1 L.Ed.2d 1435.

The instant situation makes appropriate our reference to the time-honored principle recently reiterated by the Supreme Court in Beacon Theatres, Inc. v. Westover, 356 U.S. 956, 78 S.Ct. 996, 2 L.Ed.2d 1064, granting certiorari, and 79 S.Ct. 948, 952, on the merits, in this language: "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."

 Plaintiff also urges, (1) that the evidence furnished no basis for finding, as the trial court did, that the insured made false representations as to material matters so as to vitiate the policy on the ground of fraud, and (2) Pyramid, by its conduct, waived that defense. Without reviewing the pertinent facts, let it suffice to say that upon careful consideration of the record we are convinced that as to both issues a fact question was presented.

The judgment is reversed and the cause remanded for a jury trial.